JOHN WALKER

v.

REUBEN M. PRITCHARD et al.

*Filed at Ottawa June 17, 1887.*

1. APPEAL—*freehold involved, but not brought in question—and of the severable elements in a decree, as controlling the right of appeal.* Although a freehold may have been involved in a suit, and in the decree therein rendered, yet if no objection is taken to that part of the decree relating to the freehold, an appeal from another part of the same decree, having no relation to the question of freehold, will not lie from the circuit to the Supreme Court, but only to the Appellate Court.

2. And when litigation in respect to the construction of a will, and the settlement of rights thereunder, involves the question of freehold, as well as other rights in respect to personal property, and the different parts of the decree may be treated as, in effect, distinct and severable, an appeal from that part of the decree in respect to the personal property lies only to the Appellate Court in the first instance, and the other party will not be allowed to assign cross-errors in that court as to that portion of the decree relating to the rights of the parties to real estate. Such other party can have such matters relating to the freehold reviewed in the Supreme Court.

3. CROSS-ERRORS—*whether allowable—to raise a question outside of the jurisdiction of the court.* The jurisdiction of the Appellate and Supreme Courts, of an appeal or writ of error, must be determined by the questions affected by the decree sought to be reviewed. On an appeal to the Appellate Court, cross-errors can not be assigned involving the consideration of a freehold.

4. WILL—*of the estate devised—whether a fee, or only for life with power of disposition.* A testator devised certain land to his wife, giving her full power and authority to sell and convey the title thereof at any time and convert the avails to her own use and benefit, and his will then proceeded: "I further bequeath during her natural lifetime one span of horses," and all other items not otherwise disposed of, "during her natural life as aforesaid," and at her death "all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may remain unexpended, to my two sons, (naming them,) and to their heirs and assigns forever:" *Held,* that the widow took only a life estate, with a power of disposition, and that the sons took the remainder, or such part as remained undisposed of at her death and could be identified. A power of sale superadded to a life estate does not enlarge it to a fee.

5. SAME—*absence of limiting or qualifying words, as giving character to the estate intended to be devised.* At common law a devise of land with-

out declaring the estate therein, gave only a life estate; but our statute has changed this rule, so that a fee simple title shall be intended if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised, by construction or operation of law.

6. In the absence of limiting or qualifying words, a devise of land will vest the fee; but with such words the will is to be construed with reference to giving effect to the intention of the testator, as manifested by the entire instrument, which is all to be considered together. The burden, under the statute, lies on him who contends for the restricted construction of the devise.

7. EVIDENCE—*to show that money is subject to a devise or bequest.* A testator, by his will, gave his widow a life estate in a tract of land, with power to sell and dispose of the same for her own use and benefit, and what might remain unexpended at her death, to his two sons. During her life the widow sold the land, and shortly after made certain loans of money to the two sons, and she admitted, in her lifetime, that the money she let one of the sons have, was his money: *Held,* that the sale of the land for cash, and the subsequent loan of the money, made a *prima facie* case that the money loaned was that derived from the sale.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of De-Kalb county; the Hon. C. W. UPTON, Judge, presiding.

The claim made by the bill, in brief, is, that the complainants are entitled to have a conveyance, in fee, of a certain 154-acre tract of land in Ogle county, and the payment of considerable sums of money, proceeds of sales of other property, real and personal. The claim is based on these allegations: Reuben Pritchard bought the 154-acre tract of land and paid for it, but had the deed made to Elotia Pritchard, his then wife, and "the heirs-at-law of Reuben Pritchard." He never had any children but Reuben M. and Ethan A., sons by a former marriage. The family lived upon this tract, and it was treated and regarded by all as belonging to Elotia, and Reuben M. and Ethan A., presumably, although the record does not make it clear that Elotia had a life estate, and Reuben M. and Ethan A. the remainder. At all events, it was conceded and recognized that each one had some interest in the tract, and that, altogether, they had the entire title. Reuben becoming in ill-health, determined to make

his will.  Before doing so, he required Reuben M. to convey and quitclaim his interest in this tract to Ethan A., which being done, he made his will, devising to his wife, Elotia, a certain other tract of land of $168\frac{20}{100}$ acres, in the same county, and bequeathing to her certain personal property,— all for life, with power of sale, however,—and he devised to Ethan A. and Reuben M. certain other lands in the same county, and bequeathed to them certain other personal property, and also devised and bequeathed to them what might be remaining of the property devised and bequeathed to Elotia, after her death.  After the death of Reuben, his wife, Elotia, elected to take under the will, and she took possession of the property so devised and bequeathed to her.  Thereupon it was agreed between her and Ethan A., that he was to have her interest in the 154-acre tract of land, and in considera-tion thereof he was to farm that tract and a tract which he had, of 199 acres, adjoining it, as one entire farm, and pay her the one-half of the rents and profits of the whole during her life.  No deed was made, however, and shortly after the agreement was made, Ethan A. died testate.  By his will he devised the one-half of the rents and profits of the 154 acres and the 199 acres to Elotia during her life, and the other half thereof to his wife, Sarah E. Pritchard, during her life, and the remainder in both tracts of land to his children named therein.  The land was farmed, and the rents paid to Elotia during the life of Ethan A., pursuant to the agree-ment.  After his death she took under his will, and received one-half of the rents and profits of both tracts during her life.  Elotia sold the $168\frac{20}{100}$ tract, and conveyed it during her lifetime, and she used and sold the personal property bequeathed to her by the will of Reuben.  She let Reuben M. and Ethan A. have sums of money at different times during her life, for which she took their individual promissory notes, respectively.  She died intestate, and this bill is against her administrator and heirs-at-law, and prays a conveyance of

her interest in the 154-acre tract to the heirs-at-law of Ethan A., and that the proceeds of the sale of the land and personal property devised to her by Reuben, be paid over to Reuben M. and the heirs-at-law of Ethan A.

The defendants deny that Reuben M. and Ethan A. took any interest in the 154-acre tract. They claim that Elotia's money paid for the land, and the title was to her, only. They deny that the will of Reuben invested Elotia with only a life estate in the $168\frac{20}{100}$ acre tract, and insist that it invested her with the fee simple title. They deny that the evidence identifies any money as the proceeds of the sale of the $168\frac{20}{100}$ of land, or of the personal property bequeathed to her by the will of Reuben.

The circuit court decreed that Elotia, by taking under the will of Ethan A., estopped herself to say that he had no title to the 154 acres, and that conveyance should be made of that tract to the heirs-at-law of Ethan A. It also decreed that Elotia took only a life estate in the $168\frac{20}{100}$ tract of land, under the will of Reuben, but found the evidence identified no money in the hands of the administrators of Elotia as the proceeds of that land or of the personal property bequeathed by Reuben, and therefore decreed in favor of the defendants in that respect. Both parties prayed an appeal from the decree. An appeal was perfected by Reuben and the widow and heirs of Ethan A., to the Appellate Court for the Second District, and the record was filed in that court, and errors thereon were assigned. The appellees (defendants in the court below,) assigned cross-errors. The appellees moved that the appeal be dismissed because a freehold was involved, and the appeal should therefore have been prosecuted directly to this court. Appellants resisted that motion, and moved that the cross-errors be stricken out. The court overruled appellees' motion and sustained that of appellants, but refused to dismiss the appeal, and ordered the cross-errors assigned to be stricken out. On final hearing, the Appellate

Court affirmed the decree of the circuit court as to the 154-acre tract of land, and as to its construction of the will of Reuben Pritchard, but reversed its finding that the evidence failed to identify money as the proceeds of the sale of the $168\frac{20}{100}$ acres of land and of the personal property bequeathed by the will of Reuben, and found that certain notes executed by Reuben, and by Ethan A. in his lifetime, respectively, and specified in the order of the court, were of such proceeds, and decreed that their collection be enjoined. The present appeal is by the appellees in that court, and the defendants in the circuit court.

Mr. GEORGE C. CHRISTIAN, Mr. LUTHER LOWELL, and Mr. DUANE C. CARNES, for the appellant:

Elotia Pritchard took an estate in fee of the land devised to her in the second clause of the will. The absolute power of disposal of an estate in fee makes the devise of the fee, for the reason she could not convey any greater estate than she had. *Fairman* v. *Beal*, 14 Ill. 245; *Welsh* v. *Savings Bank*, 94 id. 191; *Jackson* v. *Robbins*, 16 Johns. 587; *McDonald* v. *Walgrove*, 1 Sandf. Ch. 274; *Jackson* v. *Coleman*, 2 Johns. 391; 2 Redfield on Wills, (3d ed.) *277, 278; 4 Kent's Com. 536; 1 Jarman on Wills, (5th Am. ed.) 363.

The following cases are distinguishable from the present: *Boyd* v. *Strahan*, 36 Ill. 355; *Bergan* v. *Cahill*, 55 id. 160; *Markillie* v. *Ragland*, 77 id. 98; *Mulberry* v. *Mulberry*, 50 id. 67; *Funk* v. *Eggleston*, 92 id. 515; *Johnson* v. *Johnson*, 98 id. 564; *Roundtree* v. *Talbott*, 89 id. 249; *Peoria* v. *Darst*, 101 id. 609; *Bland* v. *Bland*, 103 id. 11; *Brownfield* v. *Wilson*, 78 id. 467; *Hamlin* v. *Express Co.* 107 id. 443.

If she took only a life estate therein, the exercise of the power of sale defeated the remainder. *Cruerys* v. *Coleman*, 9 Ves. 319; *Welsh* v. *Savings Bank*, 94 Ill. 191; *Saunders* v. *Haughton*, 8 Ired. Eq. 217; *Covenhoven* v. *Shuller*, 2 Paige, 131; 2 Kent's Com. 354, and note g.

Appellees have not traced or identified any of the personal property on hand inventoried by the administrator.

The decree is a whole, and a part of it can not be appealed from without giving us the right to question the balance. To assign cross-errors is our right. Rev. Stat. chap. 110, sec. 79; *Smith* v. *Wright*, 71 Ill. 167; *Cable* v. *Ellis*, 86 id. 543.

If this record involves a fee, the Appellate Court had no jurisdiction. Rev. Stat. chap. 110, sec. 89; *Patterson* v. *Mc-Kinney*, 6 Bradw. 394; *Lequatte* v. *Drury*, id. 389.

Mr. H. A. Jones, and Mr. A. B. Coon, for the appellees:

The will, in express terms, gives only a life estate, and a power of sale will not enlarge that estate to a fee. *Hamlin* v. *Express Co.* 107 Ill. 449; *Welsh* v. *Savings Bank*, 94 id. 203; *Boyd* v. *Strahan*, 36 id. 355; *Bergan* v. *Cahill*, 55 id. 160; *Markillie* v. *Ragland*, 77 id. 98; *Bradley* v. *Westcote*, 13 Ves. 445; *Mulberry* v. *Mulberry*, 50 Ill. 67; *Roundtree* v. *Talbott*, 89 id. 249; *Peoria* v. *Darst*, 101 id. 101; *Bland* v. *Bland*, 103 id. 17; *Friedman* v. *Steiner*, 107 id. 125; *Smith* v. *Bell*, 6 Pet. 68; 2 Redfield on Wills, 679, 680.

It is a general principle, that when any interest, short of absolute ownership, is given in the general residue of personal estate, terms for years, and other perishable funds or property which may be consumed in the use, are to be converted or invested, so as to produce a permanent capital, and the income thereof, only, is to go to the legatee for life. *Burnett* v. *Lester*, 53 Ill. 325; *Hetfield* v. *Fowler*, 60 id. 47; *Waldo* v. *Cummings*, 45 id. 421; *Boyd* v. *Strahan*, 36 id. 355.

The general rule is, that when a life estate, only, is given in the personal estate, property which is of a perishable nature is to be converted and invested in such a way as to produce a permanent capital, the interest, only, of which goes to the owner of the life estate. *Cairns* v. *Chaubert*, 9 Paige, 160; 7 Ves. 137; 2 Paige, 122; *Spear* v. *Tinkham*, 2 Barb. Ch. 211.

A legatee in remainder, after an estate for life, may call on the legatee for life for an inventory of the property devised.

*Westcott* v. *Cady*, 5 Johns. Ch. 334; *DePewster* v. *Clendening*, 8 Paige Ch. 295.

In equity, therefore, under a gift of personal property of any kind, to A, for his life, and after his decease to B, A is merely entitled to a life interest, and B has, during the life of A, a vested interest in remainder, of which he may dispose at his pleasure. Williams on Personal Prop. (2d Am. ed.) 201.

As we have appealed only from that part of the decree relating to the personalty, the other party had no right to assign a cross-error questioning the decree as to the realty. *Cheney* v. *Teese*, 113 Ill. 444.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

*First*—We held in *Cheney et al.* v. *Teese et al.* 113 Ill. 444, that although a freehold may have been involved in the litigation, and the decree thereon rendered, yet where no objection is made to that part of the decree, an appeal from another part of the same decree, having no relation to the question of the freehold, but merely settling a matter of account, will not lie from the circuit court to this court, but must be taken to the Appellate Court. And so, if this appeal had been brought directly to this court, appellant would have been entitled to have had it dismissed, and therefore if the motion in the Appellate Court to dismiss had been allowed, it would have been within the power of appellant to have prevented an appeal to any court. The theory of the decision in *Cheney et al.* v. *Teese et al. supra*, is, that where different parts of a decree relate to matters wholly independent of each other, so that the decision as to one part has no influence or bearing upon the decision as to the other part, they are severable, and, in effect, distinct decrees, and an appeal may, consequently, be made from either part without affecting the record as to the other part. When such an appeal is taken, manifestly the question of jurisdiction must be determined

by the question affected by the decree, as was there held, and it would inevitably follow that cross-errors could not be assigned as to the part of the decree not brought before the court by the appeal.

*Second*—The second clause of the will of Reuben Pritchard is as follows:

"Second. I give, devise and bequeath to my beloved wife, Elotia Pritchard, in lieu of her dower, certain lots of land being in the county of DeKalb and State of Illinois, and described as lots two, the north-east quarter and east half lots one and two, the north-west quarter of section four in township (38) north of range (4) east, containing 168 and 20-100 of acres of land according to government survey. I appoint and fully authorize my wife, Elotia Pritchard, with full power and authority to sell and convey the title to the above described lands at any time and convert the avails to her own use and benefit, and also I further bequeath during her natural lifetime one span of horses—one an iron gray and one a bright bay, and two colts, one black and one bay, coming three years old, three cows, and all the household furniture now by me owned, and all the farming tools that are used and by me owned on the premises that I now occupy, and other items not particularly named and disposed of in this will, during her natural life as aforesaid, and at the death of my said wife, all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may remain unexpended, to my two sons, Reuben M. Pritchard and Ethan A. Pritchard, and to their heirs and assigns forever."

The Appellate Court, per BAKER, J., speaking of this clause, said:

"It is plain that by the terms of this bequest Elotia Pritchard was made legatee for life of the specific live stock and chattel property mentioned therein, with remainder over to her step-sons. It was provided, however, that the sons should take, as such remainder-men, not the whole of the property

absolutely, but it, or such of it as should be unexpended at the death of the life tenant. None of the chattels left by Elotia Pritchard at her decease, and inventoried by her administrator, are identified as being the precise or specific articles of property that she took under the will as legatee for life. A life estate in personal property gives the donee a right to consume such articles as can not be enjoyed without consuming them, and to wear out by use such as can not be used without wearing out. The fifty bushels of wheat and one hundred bushels of oats, were evidently intended by the testator for consumption on the farm, and the horses, cows, wagons, harness, farming utensils and lumber, intended for use on the farm, and presumably, during the fifteen years that elapsed between the death of the testator and that of the legatee for life, the articles mentioned either died or were worn out, or used and consumed for legitimate farm purposes. It makes no difference that cows, heifers, steers and calves appear in the inventory made by the administrator, for they are not shown to be the domestic animals that were given for life, or the increase from them. In the inventory of the estate of Reuben Pritchard, promissory notes and money on hand, amounting in the aggregate to $850, are mentioned; but the first clause of his will directed that his funeral expenses and just debts should be paid, and we are unable to say, in the absence of proof, that there is any presumption that these notes and moneys, which were not specifically given by the will, were not used by the executors in payment of funeral expenses, debts, and cost of administration, but went to the legatee for life, under the words, 'and other items not particularly named and disposed of in this will,' as a residuary bequest. But even if such were the case, we think it is manifest, from a consideration of the various provisions of the will and in the light of the surrounding circumstances, that it was the intention of the testator that his widow should convert to her own use, and consume, if she

deemed she had occasion so to do, the residue of moneys in her possession, whether on hand at his death or realized from the notes, and that the remainder-men should only have such portion thereof, if any, as remained unexpended at the time of her death. In our opinion, the decree of the court upon this part of the case should likewise be affirmed.

"The more important question in the case is with reference to the devise of the 168 acres of land. The doctrine is, that a will may create a life estate, with power to sell and convey the fee, and limit a remainder after the termination of the life estate. (*Kaufman* v. *Breckinridge,* 117 Ill. 305, and cases there cited.) In *Hamlin* v. *United States Express Co.* 107 Ill. 443, the Supreme Court laid down certain principal rules of construction as applicable to such cases as this, and cited a number of prior decisions of the court as authority therefor. These principal rules are: 'The intention of the testator, if not inconsistent with the rules of law, shall govern; and this intention is to be ascertained from the whole will and all its parts, taken together. Every clause and provision, if possible, should have effect given to it according to the intention of the maker. A later clause of a will, when repugnant to a former provision, is to be considered as intending to modify or abrogate the former.' In the *Hamlin case* the first clause of the will, by its express terms, gave the real estate with full power to hold, use, enjoy or dispose of it, and convey it, by absolute conveyance, in fee simple; and this language, considered by itself, would vest an estate in fee in the donee. The only words found in the will to qualify the language so used, and indicate the intention of the testator was to limit and restrict such language so that the effect would be to vest in the donee, not the title in fee, but an estate for life with power to dispose of and convey the fee, and with remainder for the benefit of specific legatees, are those that occur in the subsequent clause of the will; and create the remainder by directing the limitation over in respect to all real estate not conveyed by

the first donee. The decision in the *Hamlin case* is cited with approval in *Kaufman* v. *Breckinridge,* above. So, also, in *Bergan* v. *Cahill,* 55 Ill. 160, and *Friedman* v. *Steiner,* 107 id. 125, the qualification to reduce the fee that is apparently donated, to an estate for life, is found only in the limitation clause of the will. The primary consideration is an ascertainment of the intention of the testator, and it is wholly immaterial in what part of the will the words are found which indicate such intention. Nor do we deem it essential to the creation of a life estate, that the intention so to do should be expressed in any set form of words, and all that is required in order to show such an estate, and not the fee simple title, is given the donee, is that it shall clearly appear from a consideration of all the various clauses and provisions of the will, when taken and compared together, that it was the testamentary intention the donee should have a life estate.

"We are of opinion the will in question gave to Elotia Pritchard a life estate in the 168 acres of land, with power to sell and convey the same in fee, and convert the proceeds and avails thereof to her own use and benefit, with remainder in the land, if unsold under the power, and if sold, then the remainder in such portions of the proceeds and avails as remained unexpended at time of the death of the donee, to the two sons of the testator. Both the land and personal property are given by one and the same general clause of the will, and at its close the testator says: 'During her natural life, as aforesaid, and at the death of my said wife, all the property hereby devised or bequeathed to her, as aforesaid, or so much thereof as may remain unexpended, to my two sons.' It would seem the words, 'all the property hereby devised or bequeathed,' included both the real estate and the chattels mentioned in that clause of the will. If the testator intended, by the first sentence of the clause, to invest his wife with the title in fee, then the donation of the power to sell and convey was wholly inoperative and useless. So, also, was the power

to convert the avails of the land, as she would be invested with that right as the owner of the fee simple title. One of the rules of construction in the interpretation of wills is, to give effect, vitality and force, if possible, to each and all of its provisions. So, also, the limitation upon the use to which the avails of the land were to be applied,—that her power should not extend to any disposition she might think fit to make of the proceeds derived from the sale, but that she should have authority only to 'convert the avails to her own use and benefit,'—is inconsistent with the idea he regarded her in the light of an owner in fee simple absolute, and is an indication it was his intention that the proceeds not consumed for her own use and benefit, but remaining 'unexpended' at her death, should vest in his two sons, as provided in the latter part of the clause."

The argument of counsel for appellant assumes that the language employed in this will clearly vests a fee in Elótia, for there can be no question that a power of sale, superadded to a life estate, does not enlarge it to a fee. 2 Redfield on Wills, (2d ed.) p. 344, sec. 52. This assumption of counsel, in our opinion, results from a misapprehension. The language of the will is: "I give, devise and bequeath to my beloved wife, Elotia Pritchard, in lieu of dower, certain lots of land,"—and the lands are then described. No words follow the description of the lands, declaring what estate is devised. This, at common law, only gave a life estate in the land. 2 Redfield on Wills, (2d ed.) p. 321, sec. 20; 2 Jarman on Wills, (5th ed.) 267; 4 Kent's Com. 267. But our statute provides, that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." (Rev. Stat. 1874, p. 275, sec. 13.) So it is a

question of construction, from the entire instrument, what estate is given. In the absence of limiting or qualifying words, it is a fee, but with such words, the instrument is to be construed so as to give effect to the intention of the testator, as manifested by the phraseology of the entire instrument, and hence arbitrary rules of common law, applicable to cases where, before the enactment of the statute, a fee was clearly technically given, are not pertinent, for in those cases, there is no question, in the first instance, what estate is given, but it is,—a fee being given,—what effect have subsequent words of limitation, etc. Here, there being words of qualification and restriction, they are, under the statute, to be considered in determining, in the first instance, whether a life estate or a fee was intended.

The 28th section of chapter 26, 1 Victoria,—adopted in 1837,—is somewhat analogous to this section, but we think less full and clear in expressing the idea than is our statute, that where there is a general gift, and in the same instrument qualifying or limiting words, the whole instrument is to be read and considered together in determining what estate was granted.

Jarman, in his work on Wills, (5th ed.) vol. 2, p. 288, says, speaking of that section: "Now an estate in fee will pass by such a devise, (*i. e.*, a general one,) unless a contrary intention shall appear by the will. The *onus probandi* (so to speak,) will, under the new law, lie on those who contend for the restricted construction, and will not be discharged by showing that another devise in the will contains formal words of limitation, or that a special power of appointment is, in terms, given to the devisee, though if the same land be given, in one part of the will, to A, and in another, to B, the presence of words of limitation in the latter gift, and their absence from the former, are material to correct the apparent contradiction, and to show that the testator meant a gift to A for life, with remainder to B in fee."

Theobold, in his treatise on Wills, (published in 1876,) page 484, says: "But, as a rule, when there is a gift to A, indefinitely, followed by a gift at his decease, A will take only a life interest."

In *Constable* v. *Bull*, 3 DeG. & S. 411, which was decided in 1849, the language was: "I give, devise and bequeath unto my dear wife, Mary Ann Constable, all and every my estate and effects, goods, chattels, houses, lands, moneys, etc., and wheresoever the same may be at the time of my decease, for her sole, separate use and benefit. I further give, will and direct that at the decease of my said wife, whatever remains of my said estate and effects shall go to and be equally divided, share and share alike, between the following persons hereinafter named," etc. It was held that this gave only a life estate to the widow.

In the case of *Bibbens* v. *Potter*, 10 Law Rep. (Ch. Div.) 733, decided in 1879, Emily Bibbens, by her will, gave her sister, Ann Maria Bibbens, "all her estates and effects, both real and personal," for her own use and benefit, absolutely. By a codicil, made afterwards, and directed to be taken as a part of her will, she added: "After the death of my sister, Ann Maria Bibbens, I give, devise and bequeath all property of mine which may then be remaining, to," etc. The Vice-Chancellor held, that, construing the will and codicil together, the gift to Ann Maria was cut down to a life estate.

*In re Stringer's Estate*, and *Shaw* v. *Jones & Ford*, 6 Law, (Ch. Div.) 1, (decided in 1874,) the will of Thomas Stringer used this language: ·"First, I give and bequeath unto my brother, *John Stringer*, all my real and personal estate and effects whatsoever and wheresoever, with full power and authority for him to give, sell and dispose thereof, or any part thereof, to such person or persons, and for such purposes, as he shall think fit, by any deed or deeds, writing or writings, or by his last will and testament, in writing, already executed or hereafter to be executed by him, or otherwise ; and I do hereby

name and appoint him the sole executor of this my will; but provided he shall not dispose of my said real and personal estate, or any part thereof, as aforesaid, I do hereby give, devise and bequeath my said real and personal estate, or such part or parts thereof as he shall not dispose of, in the manner following:" The testator then devises all his real estate to certain named parties, and gives certain specific legacies of his personal estate. This, it will be noted, gives every right of disposition and control of the property that an owner in fee has, and goes much beyond the power in the present case, which does not include the right to give or will the property. John Stringer died before the testator. The Master of the Rolls held that the devise over was void, because repugnant to the devise to John Stringer. This was reversed by the Court of Appeals, that court holding that the will gave John Stringer a life estate, only. In the first part of the opinion of JAMES, L. J., he seems to think that the death of John Stringer, before the testator, makes the case different from what it would have been had he survived him. But the decision is not put on that ground, but upon the construction of the entire will. He says: "But it appears to me, that upon the true meaning of this will, taking, as we are bound to take, not only this particular clause, but every part of the will, into consideration, the testator has, in the plainest manner possible, short of express words, provided for the event of his brother's death. In the first place, I should say that I think that the better construction of this will is, that the testator only made his brother tenant for life, because you have not only got those words,—that is to say, the gift and power superadded, and a gift over, in terms, if he does not execute that power,—but you have subsequent gifts, which would seem to be wholly inconsistent with there being an absolute gift, in the first place, to his brother. First of all, there is an appointment of executors. It seems to me to be wholly irreconcilable, upon any ordinary principle, with the notion

that he was only dealing with that which the brother should not have spent or given away in his lifetime. The words are, 'I give and bequeath unto the said *Robert Hasketh,* the elder, and Michael Damtry, my executors,' etc. * * * Then, when we look at the rest of the will,—and I think on this demurrer we are at liberty to look at the whole of the will,—we find that it is full of gifts to take effect after the survivor of the testator and his brother. * * * I am of opinion that all these things show, and lead to the necessary implication, that the testator was not, in the subsequent part of his will, merely dealing with the part of his estate which should be left undisposed of by his brother,—that he meant to make provision for that which might occur in the case of the brother's death in his lifetime. I think the natural and proper meaning of it would be, taking the whole context of the will, to say, notwithstanding there is a gift, in the first instance, of the real and personal estate, in terms purporting to be an absolute gift, out and out, of the whole, that the gift is cut down to an estate for life, with that which is practically exactly the same thing,—an absolute power of appointment and disposal in any way in which the legatee might think fit. * * * Whichever way you take it, it seems to me the real meaning of the gift over is, that it was to be in case the brother did not live to dispose of, or, if living, did not dispose of, the real estate. That being so, it appears to me the gift over is not made void by those words, by its being, as it is said to be, a violation of the rule that a man can not create a new course of devolution in a gift once given, for that is what I hold to be the meaning of the word 'repugnant.'" BAGALLY, L. J., said: "I am of the same opinion. It appears to me, that when you consider it, the primary gift in favor of the brother, *John Stringer,* is divided into three portions: the gift itself, the power conferred, and the gift over in the event of the power not being exercised." And after arguing on the different clauses in the will, considered to-

gether, he says: "On the whole, I think that the only way to give effect to all the provisions in the will is, to hold that the testator gave to his brother a life estate, with a power of appointment and disposition over the real and personal estate, and with regard to that real and personal as to which there was no exercise of the power of disposition, the various provisions of the after-part of the will were to take effect."

*Third*—We think the evidence sufficiently sustains the views of the Appellate Court, that the notes, collection of which is enjoined by its judgment, were given for money derived from the sale of real estate. While it is true, as contended by counsel, that there is not entire concurrence as to dates and amounts, nor such a division between Reuben M. and Ethan A. as should have been if the loaning of the money had been intended as the final settlement of the balance in her hands, yet it is to be borne in mind this loaning was not intended as a final settlement, but evidently only as advancements, from time to time, subject to recall, if necessity should require it. Exact proof, excluding all doubt, in such cases, is often impossible, and certainly in no case is indispensable. It was here shown that the land was sold for cash; that Elotia subsequently loaned this money to the remainder-man; that, speaking of Reuben, she said the money was his, etc. The sale for money, and the subsequent loan of money, made a *prima facie* case that the money loaned was that derived from the sale. The burden then changed to the defendants to show, if this was not the same money, what money it was. We do not think they have overcome that *prima facie* case.

The judgment is affirmed.

*Judgment affirmed.*