## William H. Taylor v. Frances Dawson.

1. FREEHOLD—*Where not Involved.*—In a proceeding for partition, which raises no question as to the title of the land, a freehold within the meaning of the statute is not involved.

2. APPEALS—*Decree for Partition Final.*—A decree in partition which finally settles the rights of the parties, is final, and it is not necessary to wait until the sale and final distribution of the proceeds before taking an appeal or writ of error.

3. ESTOPPEL—*When a Duty to Speak.*—Where a widow paid off a mortgage given by her deceased husband, in which she joined, and suf-

fered a third party to purchase the shares of the heirs in the mortgaged property, without asserting any claim upon such premises for the amount she had paid, she was held to be estopped from claiming an interest in the land by reason of such payment, as against the purchaser.

4. TAXES—*Payment of, in Suits for Partition.*—In proceedings for partition of real estate, the amount paid for taxes upon the same is to be apportioned among the parties according to their interests in the lands and the equities of the case.

**Bill for Partition.**—Error to the Circuit Court of DeWitt County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Heard in this court at the November term, 1895. Reversed and remanded. Opinion filed May 16, 1896.

WILLIAM BOOTH, attorney for plaintiff in error.

Subrogation is a right that must be actively asserted. Junkers v. Rush, 136 Ill. 179.

The right may be lost by negligence, resulting in prejudice to others, or if rights of others have intervened. Sheldon on Subrogation, Secs. 43 and 44; Gerrish v. Bragg, 55 Vt. 329.

It will not be allowed against an interest taken on faith of the records. Sheldon on Subrogation, Sections 17 and 20.

A discharge of a mortgage, unless effected through accident or mistake, is an absolute bar. 34 American Decisions, 195; Guy v. Duprey, 16 Cal. 199; Bently v. Wheeler, 3 C. E. 374.

A release on margin of the record in the recorder's office forever thereafter discharges and releases the mortgage, and is a bar to all actions or suits brought or to be brought thereon. Hurd's Statute Ill., 1893, Chap. 95 (Mortgages), Sec. 8; same subject, Starr & Curtis, 1635.

Subrogation can not be enforced against a *bona fide* purchaser without notice; thus if a judgment binding lands be discharged by a surety, he will have no right of subrogation to the lien thereof as against a purchaser of the land, relying upon an entry of satisfaction of the judgment on the judgment docket. Persons v. Shaffer, 65 Cal. 79; Richards v. Griffith, 93 Cal. 493; Am. Dec., 76, 518; Bunn v. Lindsay, 95 Mo. 250; 6 Am. St. Rep. 48; Gaskill v. Wales, 36 N. J. 527.

It is an equitable, and not a legal right, and can be enforced only in a court of equity. It being the creature of equity it will not be enforced when it will work an injustice or wrong to parties of equal equities. McCormick v. Irwin, 35 Pa. St. 111; McGinnis' Appeal, 16 Pa. St. 445; Reilly v. Mayer, 12 N. J. Eq. 55; Bunch v. Grove, 111 Ind. 35; Am. Dec., 497.

G. K. INGHAM, attorney for defendant in error.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The plaintiff in error filed his bill for partition of certain lands of which Henry Dawson died seized, and in which the plaintiff in error had acquired an interest of two-fifths, subject to the homestead and dower rights of the widow, Frances Dawson, by purchase of the undivided shares of Willis and Flora, two of the five children of the deceased, who died intestate.

The widow, by answer and cross-bill, set up that the deceased, some two years before his death, had executed a mortgage on said land in which she had joined, to secure an indebtedness of five hundred dollars, evidenced by two promissory notes, payable to William Bishop, and that she had paid the notes and lifted the mortgage with her own means, and she asked that the amount so paid by her should be made a first lien upon the land in her favor. The claim thus presented was resisted by appellant, and the issue therein raised the principal question in the case. The cause was heard and a decree of partition was entered, and a further decree according to the prayer of the cross-bill, that the land should be subject to a lien in favor of the widow for the amount so paid by her to discharge said mortgage, which, with interest since accrued, was found to be $914.43, and for the additional sum of $374.97, paid by her for taxes on the lands.

It is suggested by the defendants in error that a freehold is involved here, but the assignments of error present only the question as to the propriety of the liens so allowed in favor of the widow and raises no question whatever as to

the title of the land.   There is and was no dispute as to the ownership.   In such cases it is well settled that a freehold is not involved within the meaning of the statute, relating to the jurisdiction of this court.   Walker v. Pritchard, 121 Ill. 221.

The further suggestion that the decree is not final must be overruled on the authority of Myers v. Manny, 63 Ill. 211.   The rights of the parties were finally settled by the decree, and it was not necessary to wait until the sale and final distribution of the proceeds, which amount merely and only to the enforcement of the decree, before taking the writ of error.

The question, then, is as to the ruling complained of in giving the widow a lien for the amount of the mortgage and the taxes paid.

First as to the mortgage.   This instrument was executed in 1883.   Henry Dawson, the mortgagor, died in 1885.   On the 10th day of January, 1887, the following release was entered on the margin of the record :

" For and in consideration of the full payment of the amount secured by the annexed mortgage, I hereby release and quit-claim to Henry Dawson and wife, by whom said payment was made, the real estate described in said mortgage, and forever cancel, release, and discharge the same of record.

Wm. Bishop.   [Seal.]

Dated the 10th day of January, A. D. 1887."

The money with which this debt was paid was derived by the widow from the proceeds of said land, upon which she resided.   She conducted the farming operations and supported the family.   She gave the money to the administrator, who paid it over to the mortgagee, by whom the above release was entered after the last note was paid.

On the 3d of June, 1891, Willis Dawson, the eldest of the children, being then of age, conveyed his undivided one-fifth interest in the land to the plaintiff in error for the consideration of $450, and on the 1st of February, 1892, Flora, the next eldest, being also of age, conveyed her one-fifth interest to the plaintiff in error at the same price.

It is urged in support of the decree, that by the terms of
the release it was apparent the money had been paid by the
widow, and thereby the plaintiff in error was put upon in-
quiry to ascertain what were her rights, as well as by the
fact of her possession of the land. Her possession would
naturally be referred to her right as widow to homestead
and dower, and would not suggest that she had further
claim or demand as the equitable holder of a discharged
mortgage.

The phrase in the release, " I hereby release and quit-
claim to Henry Dawson and wife, by whom said payment
was made," would hardly warrant the conclusion or sug-
gestion that the payment was made by the widow of Henry
Dawson, in whole or in part. It is just as reasonable to
suppose that it was made by the mortgagor and his wife,
during the life of the mortgagor, as the language imports.
But by whomsoever the money was paid, the mortgage was
forever canceled, released and discharged of record, as was
explicitly declared by the concluding part of the entry. Any
person would ordinarily suppose, in view of the terms here
employed and of the provisions of our statute, Sec. 8, Chap.
95, providing for this mode of release, which " shall bar
all actions or suits brought or to be brought" on the mortgage,
that he might safely deal with the land without regard to the
mortgage. Not only so, but in this instance, as appears
from the proof, the widow had several interviews with the
plaintiff in error in regard to his purchase of these interests.
The first was before he bought the share of Willis. She
evidently did not want the children to sell, and though she
says she expressed her objection to the plaintiff in error, yet
the proof shows that he sent her word by her brother that
Willis wanted to sell for $450, and asking if she was will-
ing, and she sent back word that she would rather he would
buy it if it was to be sold. After he had bought this in-
terest, he told her she could have it for what he had paid
Willis. Still later he bought the interest of Flora, but be-
fore he did so the widow asked him not to. There were
other conversations between them about the matter before
the last deed was made, but never at any time did Mrs. Daw-

Taylor v. Dawson.

son intimate that she held or would assert any lien as mortgagee or otherwise. She knew the price to be paid, which was presumably fair in view of her predominant rights of homestead and dower, and she must have known that, subject to those rights, the plaintiff in error was expecting a clear title. Had she then set up the claim now urged she would no doubt have prevented, or at least postponed, the sale—a thing she much desired.

Manifestly she had nothing of the sort in her mind, and never had any purpose up to that time of making such a claim. No doubt it was afterward suggested to her for the first time; but the fact is that the deed from Willis was more than four years after the release was entered, and the deed from Flora more than five years; and as already stated, she never asserted her claim directly or indirectly to the plaintiff in error at any time during all the negotiations and interviews preceding the filing of her answer in this case.

The plaintiff in error may well say that he has been misled by the course she has thus pursued, and that upon the plainest principles of equity she is estopped from the position she now assumes, as against him. Nor, as we think, does this involve any substantial hardship to her in view of the rental and productive value of the farm as shown by the evidence.

We hold it was error to burden the interest of the plaintiff in error with any part of the mortgage debt.

As to the item of taxes, it appears that the amount found by the court includes all taxes paid by the widow since the death of her husband up to the time of the decree. We are of opinion that the shares held by plaintiff in error should be charged with their proportion of the taxes paid since his purchase, and the amount thereof should be credited to the widow in adjusting accounts between her and the plaintiff in error as to the rents.

The decree, so far as it establishes a lien in favor of the defendant in error, Frances Dawson, for the debt secured by the said mortgage, and for the whole amount of taxes paid upon the land, will therefore be reversed and the cause remanded.