## John W. Clark et al.

v.

## James S. Clark.

*Opinion filed April 21, 1898.*

1. Wills—*what is not a coupling of power of absolute disposition with life estate.* The nomination of the wife as executrix, with power to sell and dispose of the testator's property, "using her own discretion therein," following a devise of such property to the wife for life, does not couple a power of absolute disposition with the life estate, but merely empowers the wife to sell as executrix, in due course of administration.

2. Same—*life tenant has no power, as executrix, to sell property for her support.* A wife who has a life estate in the testator's property has no authority, under a clause of the will nominating her as executrix, with power to sell the property at discretion, to sell the same for her support and maintenance.

APPEAL from the Circuit Court of McDonough county; the Hon. G. W. THOMPSON, Judge, presiding.

This is a proceeding in chancery, by bill filed in the circuit court of McDonough county by John W. Clark and others, seeking to set aside a deed made by Mary Clark to appellee, James S. Clark, conveying certain property in Macomb, Illinois. The original bill alleged that the grantor was seventy-eight years old, feeble in body and mind, and that she executed the deed because of the fraudulent and undue influence of the grantee. By an amendment to the bill it was alleged the grantor was without power to make said conveyance.

From the bill, and exhibits filed therewith, it appears that the land in controversy was owned by John P. Clark, husband of Mary Clark, at the time of his death; that by a will, which has been duly probated, he disposed of all his property as follows:

"*First*—After the payment of all just debts and funeral expenses, I give, devise and bequeath to my wife, Mary Clark, all my property, both real and personal, for and during her natural life.

"*Second*—After the decease of my said wife it is my will that whatever remains unexpended of my estate shall be divided as follows: To my children, Jacob P., Daniel, Reuben R., James, Rhoda Davis, wife of Edward Davis, Charlotte Beck, wife of Mac Beck, Sarah Parrish, wife of Charles Parrish, each $100; to Elizabeth Applegate, wife of Elias Applegate, $150; to Mary Emmons, wife of John Emmons, $150. After the payment of the foregoing legacies, it is my will that the remainder of my estate be divided equally among my following named children, viz.: L. D. Clark, Silas Clark, John W. Clark and Margaret Johnson, wife of John Johnson.

"Lastly, I hereby nominate and appoint my said wife, Mary Clark, to be executrix of this my last will and tes-

tament, and hereby authorize and empower her to sell and convey any and all real estate and personal property of which I may die seized, using her own discretion therein."

On March 22, 1897, Mary Clark undertook to convey the premises known as her homestead, in Macomb, to James S. Clark by the following deed, which is the instrument sought to be set aside in this proceeding:

"*Know all men by these presents*, That I, Mary Clark, of Macomb, McDonough county, Illinois, as executrix of the last will and testament of John P. Clark, late of said county, in consideration of $100 to me in hand paid and the further consideration of services rendered and to be rendered by James S. Clark, have and by virtue of the power in me vested as such executrix by said last will and testament do hereby sell and convey unto the said James S. Clark all the rights, title and interest which the said John P. Clark, at the time of his death, had in and to the following described real estate, to-wit: Lot one (1) and the north one-half (½) of lot four (4), in block seven (7), Chase's addition to the city of Macomb, McDonough county, Illinois. And the said Mary Clark, personally and as executrix, as aforesaid, for and on behalf of the estate of the said John P. Clark, deceased, covenants and agrees to and with the said James S. Clark, and his heirs and assigns, that at the time of his death he, the said John P. Clark, was lawfully seized in fee of the said premises, and that same was free and clear of all incumbrances, and that his said estate shall and does hereby warrant and defend the title to said premises against the claims of all persons. The grantor reserves possession of said premises during her natural life.

"In witness whereof said Mary Clark, personally and as executrix, as aforesaid, has hereunto set her hand and seal this 22d day of March, A. D. 1897.

$$\text{MARY} \overset{\text{Her}}{\underset{\text{Mark.}}{\text{X}}} \text{CLARK.} \quad [\text{Seal}]"$$

The defendant filed his answer, denying the charges of fraud and undue influence as well as the allegations of the amended bill. Upon a hearing the bill was dismissed for want of equity. Complainants now prosecute this appeal.

PONTIOUS & MICKEY, NEECE & SON, and BAILY & HOLLY, for appellants.

T. B. SWITZER, and H. C. AGNEW, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The appellants insist the court below should have granted the relief prayed in the bill, as amended,—first, on the ground that the grantor, Mary Clark, under the provisions of her husband's will, had no authority to make the conveyance in question; second, that even if she had such authority, her act in this instance did not come within the scope of her authority; and third, that the conveyance was procured by the fraud and undue influence of the grantee. The appellee contends that the question of the grantor's authority to make the deed is the only one properly before this court for review.

It will be seen by the terms of the will, after the payment of testator's just debts Mary Clark was given the property of testator, "both real and personal, for and during her natural life;" then, after her death, whatever remained unexpended was to be applied to the payment of legacies to certain of his children, and after the payment of the legacies the remainder was to be divided equally among the complainant John W. Clark and others named.

It is said by appellee that the last clause of the will appointing his mother executrix, and empowering her to sell and convey "any and all" of testator's real estate and personal property, "using her own discretion," authorized her to make the deed in question, and it seems his contention is that an absolute power of disposition was coupled with the life estate of the wife. We do not think this proposition can be maintained. It is clear that by the first clause the wife was given only an estate for life. By the last clause she was made executrix of the will and given certain powers, but her power of sale

under that appointment was that of an executrix, and was no greater than would have been the power of any other person who might have been named as executrix. Had the testator intended her to have more than a life estate, he would have made it apparent in the clause limiting her enjoyment of the estate. The power of sale as an executrix was a wise provision. The will, upon its face, shows that the testator contemplated the payment of his just debts, and this might necessitate the sale of part or all of his property.

Having only the power to sell as an executrix, the inquiry then is, was the deed of Mary Clark such a sale as came within the scope of her authority? The consideration, as stated in the deed, was $100 "and the further consideration of services rendered and to be rendered by James S. Clark." Testimony is introduced to show that the services contemplated by the language thus used were the care of the grantor as long as she should live. This, we think, was an act unauthorized by her power. The only sale which she could have properly made, in her capacity as executrix, was one for money, and in the usual course of administration of her husband's estate.

This case, in principle, is not unlike that of *Griffin* v. *Griffin*, 141 Ill. 373. There the testator devised to his wife real estate for and during her natural life, "with the same right to sell the same for her support and maintenance that I would have if living," limiting the remainder to his children. An attempt was made by the wife to sell it to a son in fee, in consideration that he would take care of her the remainder of her life. It was there held that the sale, even for her support and maintenance, must be a sale for a stipulated sum in money. We said (p. 388): "This was not a good execution of the power to sell the land for the support and maintenance of Mary Griffin. The sale and conveyance were a fraud on the rights of the devisees of the remainder in fee. It was a perversion of the power given by the will, and not a

*bona fide* exercise of that power. It was not within the reasonable contemplation of the power that the land should be sold thereunder for the purpose of paying the debts of the life tenant incurred for purposes other than her support and maintenance. Nor was it within its contemplation that the land should be sold otherwise than in the usual and customary manner, for a stipulated sum in money and with some reference to its value. That which John Griffin authorized his wife to do was 'to sell' his real estate,—*i. e.*, dispose of it for an equivalent in money. It would hardly be contended that if Mary Griffin, immediately upon the death of her husband, had conveyed all the lands, under the power, to a person who agreed to support and maintain her during life and bury her when dead, it would be a valid conveyance within the purview of the power; and it does not help the matter that she refrained from so doing until she was over ninety years of age and stood with one foot in the grave. * * * There was no error in setting aside and canceling the deed to him," the grantee. The principle there announced applies with greater force to the case at bar, the widow in this instance being given no right to sell for her support and maintenance.

In this view of the case it is unnecessary to consider whether the issue of undue influence was properly raised by the bill and answer.

The conveyance, for want of power in the grantor, is void, and the circuit court erred in not setting it aside for that reason. Its decree will accordingly be reversed and the cause will be remanded to the circuit court, with directions to enter a decree in conformity with the views here expressed.               *Reversed and remanded.*