## Victor Hemphill, Executor, Appellee, v. George F. Fanning, Executor, Appellant.

1. WILLS, § 226*—*when construed so as to carry out intention of testator*. A will must be construed so as to carry out the intention of the testator if the same can be lawfully done and not do violence to the language employed.

2. WILLS, § 364*—*when life tenant may use principal of personalty*. A will by which a testator gives to his wife all the income and profits from all of the personalty of which he should die possessed and so much of the principal thereof as she shall request for her use, comfort, pleasure or benefit, and that, subject to the life estate of the wife, a certain son shall have a certain sum of money, if there be that much remaining at the death of the wife, and that the children of another son and his wife, who may be living at the termination of the wife's life estate, shall have equal parts of the residue, must be construed as giving to the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

widow the right to have and use the principal of the fund, only for her own personal use and benefit, and then only when such use is necessary for her proper maintenance.

Appeal from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed October 22, 1918.

EDWARD C. KNOTTS and JESSE PEEBLES, for appellant.

ALEXANDER H. BELL, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

William Hounsley, deceased, died at Carlinville, leaving a wife, Charlotte Hounsley, a son Thomas, and Ida Hounsley, the wife, and Ruth and Wayne Hounsley, the children of a deceased son, William H. Hounsley, who together constituted all of the persons whom he regarded as the natural objects of his bounty, or at least they were the only persons he mentioned in his will as beneficiaries thereunder.

Appellee is the executor of the will. The widow of the testator and the son Thomas lived in or near Carlinville. Ida, the widow of the deceased son, William H., lived in Colorado where her children also lived. In the will of William Hounsley the elder, deceased, he gives to his wife Charlotte for life the use of the house and lot in Carlinville, where he lived with his wife when he made the will and until his death in 1915. He also gave her for life the rents, profits and income from all the rest of his real estate, and all the incomes and profits from all his personal property. He then gives to her "absolutely, so much of the principal of said personal property as she shall request for her use, comfort, pleasure or benefit." He then directs his executors to invest his "personal property" in interest bearing securities; to give to the wife at all events the income therefrom and under certain circumstances to give to her the principal thereof.

It is the construction of these provisions with reference to the use by the widow of the principal of the personal estate that is involved in this litigation.

In the last part of February, 1916, appellee went to see Charlotte Hounsley, the widow, at the suggestion of Thomas, and she then made a verbal request of appellee that all or substantially all of the personal property be given to her. Appellee declined to do so unless protected by an order of court, inasmuch as the amount she asked for was in excess of her personal needs. She then told appellee she wanted to give it to Thomas to equalize his share of the estate as far as she could. Thomas was present when the request was made for the personal property. At that time Charlotte had not used all of the income from the estate and had used none of the principal.

On March 10, 1916, the widow filed in the Probate Court her petition for an order on appellee as executor of her husband's estate to turn over to her all the personal estate in the hands of the executor except one note for $500 inventoried as doubtful. In that petition she states that she is thereby exercising the option contained in the clause of the will last above quoted. On April 4, 1916, and before this petition had been heard, Charlotte, the petitioner, died, leaving a will dated March 8, 1916, which was afterwards probated. She was at the time of her death 77 or 78 years old. To both the will and the petition the signature of Charlotte is evidenced by her mark and is witnessed by Jesse Peebles. Whether these papers were signed by Charlotte in this way because of her lack of education or because of difficulties arising from the infirmities of years does not appear. After the death of Charlotte her executor has taken the position that the property included in the demand made by Charlotte on appellee and particularly described in her petition filed in the Probate Court became, from the time of the first demand by her, her individual property to do with what

she pleased, and that he as her executor is entitled to have it turned over to him to administer. The County Court entered an order in and by which the prayer of the petition was denied. From that order appellant took an appeal to the Circuit Court. Before a hearing on this petition was had in the Circuit Court a bill in chancery was filed in that court by appellee here to construe the will of William Hounsley, deceased, and the two cases were consolidated and heard as one case. The Circuit Court entered an order construing the will of the said William Hounsley, deceased, to give to the said Charlotte Hounsley no title in the principal of the personal property of the said testator that she could bequeath or give to any person; and held that the demand by her that it be turned over to her for any other purpose than her personal use was not within any right or power vested in her by said will; that upon her death what remained of the personal estate of the said testator, after paying the costs and expenses of administering his estate and the special bequest of $250 to Thomas, became the property of the widow and children of William H. Hounsley, the deceased son of the testator, and that the executor of the estate of Charlotte was not entitled to administer upon it.

The whole scope of the will discloses a purpose on the part of the testator first of all to suitably provide for his wife, and next to have Ruth and Wayne Hounsley, the children of his deceased eldest son William H. Hounsley, eventually receive the great bulk of his estate. To that end he has carved out life estates and uses for his wife and in one instance a remainder for life to his son Thomas, and has then taken care to provide that subject to these life estates and uses these grandchildren shall have it all, except $250 of the personal estate which he gives to his son Thomas outright, and one-third of the personal property remaining after the death of Charlotte and the payment of the special legacy of $250 to Thomas, which is given to Ida Houns-

ley, and a one-third interest in the house and lot where he lived and died, which is also given to Ida Hounsley, the widow of his son William H. Even the real estate in which Thomas is given a life estate subject to his mother's life use the will provides shall go, in the end, to these children of his deceased son William, provided Thomas shall die childless. He has even taken pains to provide that what he gives to his wife shall be in lieu of all her statutory rights in his estate. It was his manifest purpose, as disclosed by a study of his whole will, to leave no part of his property undisposed of and to so dispose of it that he knew who was going to get it. For some reason undisclosed, it appears to have been his fixed purpose that Thomas should have but $250 absolutely. There is no intention on the part of the testator manifested anywhere in the will to give to the widow Charlotte any part of the principal of the personal property for any other use or purpose than her personal use for her personal comfort, pleasure or benefit.

The will must be so construed as to carry out the intention of the testator if the same can be lawfully done and not do violence to the language employed.

The first part of the devise in question is perfectly clear. It gives to the widow for life "all the incomes and profits from all of the personal property" of which he should die possessed. Then follows this language:

"And to her, my said wife, I give and bequeath absolutely, so much of the principal of said personal property as she shall request for her use, comfort, pleasure or benefit. * * * That my said executors invest the personal property of my estate in interest bearing securities, and keep the same invested in manner and form as to their judgment seems safe, and pay the income derived therefrom, less all proper charges against the same, to my said wife, promptly upon its receipt. And it is my further will and direction that in case my said wife shall desire any part of the principal of my said personal estate for her use, comfort,

pleasure or benefit, then, upon her request, my said executors shall promptly convert the same into money and pay the same to my said wife, or in appropriate and legal manner transfer the title to said personal property to my said wife.

"Third: Subject to the life estate of my said wife as aforesaid I give and bequeath unto my son, Thomas Proctor Hounsley, the sum of Two Hundred and Fifty Dollars ($250) if there shall be that much of my personal estate remaining at the death of my said wife, and, subject as aforesaid, I give and bequeath unto my grandchildren, the children of my son, William H. Hounsley, now deceased, and his wife, Ida, who may be living at the termination of my said wife's *life estate* in said personal property, in equal parts, all of the rest and residue of my personal property then remaining."

This bequest is in entire harmony with the general scope of the will. It first provides for the widow, next a small special bequest for Thomas, and then gives the bulk of the balance to the children of William, this time giving Ida, their mother, a share with them.

The only language used in the will that gives rise to any chance for misunderstanding is the following:

"To her, my said wife, I give and bequeath absolutely, so much of the principal of said personal property as she shall request for *her use, comfort, pleasure or benefit.* * * * And * * * in case my said wife shall desire any part of the principal of my said personal estate for *her use, comfort, pleasure or benefit,* then, upon her request, my said executors shall promptly convert the same into money and pay the same to my said wife, or * * * transfer the title * * * to my said wife."

Language of the same general import has been construed by the courts of this State to give to the widow the right to have and use the principal of the fund, only for her own personal use and benefit, and then only when such use is necessary for her proper maintenance. *Griffin v. Griffin,* 141 Ill. 373; *Henderson v. Blackburn,* 104 Ill. 227; *Clark v. Clark,* 172 Ill. 355, and

that construction is strengthened when there is a bequest of the remainder of such property to some one else. *Walker v. Pritchard*, 121 Ill. 221; *Welsch v. Belleville Sav. Bank*, 94 Ill. 191.

There can be no doubt that by the language quoted the testator intended to make sure that his widow in her last days should have such personal comforts, pleasures and benefits as she should desire and the use of his property could purchase for her. On the other hand, it is quite clear that he desired to direct who should have what should remain of his property after his widow had been so cared for. That she did not need the personal property in question for her own personal use, comfort, pleasure or benefit is shown by the fact that she at no time used all of the income from the various properties left by her husband, and even at the time of her death there remained in the hands of the executor some of such income unexpended. That she did not want it for any of these purposes named is shown by the fact that when she demanded it from appellee she told him in substance that she wanted it to give to Thomas to equalize him with the rest in the distribution of her husband's estate. In other words, she proposed to prevent the carrying out of the intention of her husband as expressed in his will by possessing herself of the personal property that he intended should go to wife and children of William H. Hounsley, deceased, and turning it over to Thomas, who, for some reason known to the testator, he did not wish should have it. Whether the idea of so diverting this personal property originated with her or some one else is wholly immaterial to the determination of this case. It was equally abortive in either case.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*