REVILO OLIVER v. T. S. WILHITE et al.

and

AMARETTA OLIVER v. J. E. BROWN et al.

*Opinion filed February 18, 1903—Rehearing denied April 9, 1903.*

1. APPEALS AND ERRORS—*right of appellee to assign cross-errors.* It is not essential to the right of an appellee to assign cross-errors that he perfect an appeal from the finding of the trial court, but if a chancery decree is composed of several independent parts, an appeal from certain of such parts does not authorize the assignment of cross-errors as to the parts not appealed from.

2. SAME—*when cross-errors cannot be assigned.* Parties against whom a money decree was rendered cannot assign cross-errors as to that part of the decree, where they are not named in the appeal bond and the appellant stipulates in the record that he excepts to other portions of the decree, only.

3. SAME—*when the master's refusal to re-open case is not ground for reversal.* The refusal of the master to re-open a case to hear additional evidence is not ground for reversal unless it is clear he has abused his discretion.

4. MASTERS IN CHANCERY—*master may refuse to re-open the case to hear cumulative evidence.* After the evidence has been closed and the arguments have been heard, the master may refuse to re-open the case to hear additional evidence which is merely cumulative in its nature, and not conclusive.

5. DEEDS—*when deed will not be set aside as against judgment creditor of grantee.* A voluntary deed delivered to a third party in grantee's presence, with the intention of conveying the land to the grantee, will not be set aside as against a judgment creditor of the grantee who levied on the land after the deed was recorded, even though the deed was made for a deceitful purpose and was recorded by the third party in violation of her promise.

6. COSTS—*when defendant should not be required to pay part of costs.* A defendant to a bill in chancery to set aside a deed as against his execution sale has a right to defend the lien of his judgment both upon the theory that the deed was valid and that the property belonged to his judgment debtor, even if the deed was invalid; and he should not be required to pay the costs of the proceeding because the court held the deed to be valid, thereby rendering the other defense unnecessary.

APPEAL from the Circuit Court of Livingston county; the Hon. JOHN H. MOFFETT, Judge, presiding.

On the 18th day of August, 1897, the appellant Revilo Oliver and Mrs. Maude Barlow entered into two contracts for the exchange of lands and other property.   By the first, Mrs. Barlow, as party of the first part, agreed to convey to Oliver, as party of the second part, or to whom he might direct, the south-west quarter and the east half of section 4, township 3, north, range 9, east, in Richland county, Illinois, "free and clear of all encumbrance except the taxes of 1897 and a $100 mortgage on the south-west quarter of section 4, in consideration of which said Oliver agreed to convey to her, or to whom J. C. Howard, her attorney in fact, should direct, certain real estate in Livingston county, this State, the larger part of which is in the town of Chatsworth. The party of the first part was to have fifteen days from the date of the contract to investigate as to a part of said property and to accept the same under the contract.   Both parties were to convey their respective properties by warranty deeds, and to furnish abstracts showing a good merchantable title to the premises with the exception named, the abstracts to be furnished and deeds delivered within forty days from that date. The contract was signed by Mrs. Maude Barlow and Revilo Oliver, and witnessed by T. S. Wilhite.

By the second contract Mrs. Barlow agreed to convey to Oliver the north half of section 8 and the north half of the south-west quarter of section 8, all in township 3, north, range 9, east, in Richland county, Illinois, subject to an encumbrance of $5000, otherwise to be free and clear, in consideration of which Oliver agreed to convey to the party of the first part, or to whom J. C. Howard, her attorney in fact, should direct, his home place in Chatsworth, consisting of twelve acres of land, and his undivided interest in certain other lands in said county, and also one hundred and sixty acres in Chase county, Nebraska, subject to a mortgage of $600; also all furniture, carpets, etc., located in the aforesaid home place in Chatsworth, and two horses, the property to be con-

veyed by warranty deed and bill of sale, abstracts to be furnished showing good merchantable title, etc., with the exceptions noted. This contract also provided for fifteen days to the party of the first part to investigate as to property and accept the same under the contract; abstract and bill of sale to be furnished within forty days; possession of property to be given upon delivery of deeds, except tenant's right on the land, which extended to March 1, 1898. The party of the second part was to receive the landlord's share of all corn growing on the Richland county lands, and to retain possession of his home place until March 1, 1898, unless the same should be sold prior to that date, in which case he was to give possession within thirty days after being requested. The signatures were also witnessed by T. S. Wilhite. On both contracts was endorsed by Mrs. Barlow, "I hereby approve the above contract and accept the same this 24th day of August, A. D. 1897."

The title to the land described in the first of the contracts at that time was in Miss Hannah T. Shipley, of Pennsylvania, and to that described in the second, in George E. Levings, of Paris, Illinois. About that time J. C. Howard and T. S. Wilhite procured conveyances of both tracts to Mrs. Barlow, and on the 4th of September, 1897, deeds of conveyance were executed by her and Revilo Oliver in pursuance of both contracts. Mrs. Barlow conveyed the Richland county land to Oliver subject to encumbrances amounting to $10,000 instead of $6000, as provided in the contracts of August 18,—that is, a mortgage to Levings of $5000 on the lands purchased from him, being for part of the purchase money; one of $2000 to Miss Shipley on the land conveyed by her for part of the purchase money, and a prior mortgage of $3000 which was on the land when she conveyed it to Mrs. Barlow. Of the conveyances executed by Oliver, in three or more of the deeds the name of the grantee was left blank, and he gave a power of attorney to T. S. Wil-

hite and one George W. McCabe, a notary public, to insert therein the names of purchasers, which was done and conveyances made accordingly.

Revilo Oliver filed his bill against T. S. Wilhite and others, in the circuit court of Livingston county, at the January term, 1898, which was numbered 3036, to rescind and set aside those conveyances. To that bill some twenty parties were made defendants. It recognized the fact that all of those defendants were innocent purchasers except T. S. Wilhite, Maude J. Barlow, J. C. Howard, George E. Levings and William VanVoris, and asked a money decree against said five parties for the value of the lands purchased by the other defendants. At the February term of the same year he filed an amended bill, upon which the issues were made and the cause finally heard. Subsequently his mother, Amaretta Oliver, filed her bill against one J. E. Brown and others in the same court, and it took the number 3054. The relief asked by her grew out of a part of the facts alleged in the bill of Revilo Oliver, and the two causes were, at the hearing, consolidated and considered as one under the title and number of the first. To the amended bill thirty-four parties were made defendants. It charged that the defendants T. S. Wilhite, Maude J. Barlow, J. C. Howard, Frank Gillespie, James A. Smith, George E. Levings, G. W. McCabe, William VanVoris, T. C. Seright, J. A. Wilhite and A. T. Wilhite fraudulently and illegally conspired together to cheat and defraud the complainant out of all of his property, both real and personal, of the value of from $30,000 to $40,000, and also $1000 in cash, and procured his signature to a judgment note as security to the said Maude J. Barlow, given for the sum of $1150 to J. E. Brown & Co., upon which judgment had been entered by confession against him, and which judgment also involved his mother, Amaretta Oliver, in the litigation in No. 3054; that all of said property was clear of encumbrance except a mortgage of $600 on one hun-

dred and sixty acres of land in Nebraska; that all he re-
ceived for his property was an equity in eight hundred
and eighty acres of land situated in Richland county,
Illinois, which was poor, unproductive and worth not to
exceed $10 an acre, which was deeded to him by the de-
fendant Maude J. Barlow, subject to mortgages amount-
ing to $10,000, which he was by the terms of the deed
made to assume and agree to pay; that the said encum-
brances amounted to more than the lands were worth,
and he therefore received nothing in exchange for all
the property, money and credits secured from him by said
conspiracy; that he has placed no encumbrance on said
eight hundred and eighty acres of land and has never
taken possession of any part thereof. He asks that the
conveyance of the property to him, and said contracts
and all deeds relating thereto, be rescinded and held for
naught, and that he be re-invested with all of his prop-
erty and the title thereto placed in the same condition it
was at the time he made the conveyance. The bill then
proceeds to set out at great length how attorney William
VanVoris and said T. S. Wilhite, aided and abetted by the
seductive, deceitful and fraudulent practices of Maude
J. Barlow, a wicked and depraved woman brought into
the conspiracy by said Wilhite and VanVoris, induced
him to enter into the transactions aforesaid and to ac-
cept her for a wife, and to loan her $1000 in cash and se-
cure her note at the bank of J. E. Brown & Co. for $1150,
which practices and frauds continued from August, 1897,
to the 18th day of November of that year, when he re-
fused the said Maude J. Barlow further admittance to his
home; that the attorneys of said woman, Frank Gillespie,
of McLean county, and J. C. Howard, of Richland county,
also aided and assisted in the perpetration of said fraud.
It is alleged that, though attempting to investigate the
character and value of the Richland county land, he was
thwarted and prevented from doing so through the fraud-
ulent conduct of said conspirators, or part of them. Then

follow allegations of a conspiracy by said parties to have him marry the said Maude J. Barlow, which he finally did on the 21st day of October, 1897; that as to the Richland county land in section 4, called the George E. Levings land, he was to assume only a mortgage of $1000, but upon the exchange of deeds immediately after said mortgage, for the convenience of said Maude J. Barlow, she obtained the consent of complainant to take as security for the assumption by him of a mortgage indebtedness of $4000 in excess of the amount he had agreed to assume as against the said George E. Levings land, a promissory note for the sum of $4000, due March 1, 1898, with a power to confess judgment at any time after the date thereof, which had a stipulation on the back of it to the effect that the complainant might retain possession of his home property of thirteen acres in Chatsworth, where he and his mother had for many years resided and still reside, as security for and until said $4000 should be paid to him, or said amount should be endorsed on the said mortgage of $5000 assumed against the Levings land in said section 4, Richland county, so reducing the amount against said land to the amount of $1000, as agreed in the contract; that said note and contract were not only to bear the name of Maude J. Barlow, but also that of George E. Levings, the same party who conveyed said land in section 4 to her, and she in turn mortgaged the same to him, the said Levings, for the said sum of $5000; that the said sum of $4000 secured by said promissory note and contract has not been paid as provided in the note and contract, and that he is still the holder thereof and is still in possession of said thirteen acres, except one acre which had been forcibly taken possession of by one of the defendants, William E. Baker. He offers by his bill to surrender said $4000 note, and contract endorsed thereon, and make return thereof in such manner as the court shall direct. It is further alleged that on the 8th day of September, 1897, in pursu-

ance of said contracts, the complainant made, executed
and delivered to said Maude J. Barlow, or to such parties
as she directed, conveyances to all of said real property,
and also a bill of sale of all of said personal property,
and thereupon said Maude J. Barlow conveyed to him
all of said Richland county lands, subject to mortgages
amounting to $10,000; that by false and fraudulent rep-
resentations made by Maude J. Barlow to complainant
and Amaretta Oliver, the latter was persuaded to make a
deed to him of her valuable and improved farm in Chats-
worth township, (known as section 33,) Livingston county,
Illinois, the said Maude J. Barlow representing to the
complainant and to his said mother that she only desired
said deed to show to her relatives in order to secure a re-
conveyance to herself of her property held by her brother
in trust for her, by means of which false representations
she obtained possession of said deed from his mother and
placed the same on record.    It is further alleged that
on October 27, 1897, he was divorced from said Maude J.
by the circuit court of Livingston county on the charge
of adultery against her, which she confessed; that she
had been represented to him by her co-conspirators as
a. woman of wealth, and that she was brought into said
conspiracy for a specific consideration, but just what con-
sideration was promised her he is unable to state; that
as soon as he had parted with his title to the Livingston
county property to the said Maude J. Barlow, or to such
parties as J. C. Howard, her attorney in fact, directed,
she and her said agents and attorneys confederated to-
gether to immediately scatter the title thereto into dif-
ferent third parties' hands, and that the same was done
under such circumstances and at such grossly inadequate
prices, or by pretended conveyances without considera-
tion, that knowledge of such fraudulent transactions is
chargeable upon each and all of said purchasers thereof,
and he charges that all grantees or subsequent encum-
brancers had knowledge of such fraudulent transactions.

He asks a first lien against the Richland county land and a personal decree against said parties named as conspirators for all damages he has sustained or may sustain by reason of their wrongful acts. The prayer is for an injunction and the appointment of a receiver *pendente lite,* and that on the final hearing all of said conveyances by complainant to any of the defendants be canceled, and that he be decreed the owner of the property, both real and personal, so conveyed by him; that the said marriage be declared a nullity; that complainant be invested with title to his said lands and property as fully and completely as if the said contracts and conveyances had never been made, and that he be invested with full and complete control of the possession of the said property according to his said rights therein, and that he be reinstated to the position he was in at the time of making said contracts on the 18th day of August, 1897, and that he may have such other and further relief as the nature of his case shall require.

The allegations of the bill, in so far as they charge any of the defendants with fraud or a conspiracy to defraud the complainant, or with notice of the same, were specifically denied by each of them in their answers, the said Maude J. Barlow denying the execution of the said $4000 note and the memorandum endorsed thereon, and all knowledge of the same prior to the commencement of this litigation, and averring that payment of the $4000 indebtedness, which said complainant claims said note and contract represented, and which is still due from her to him according to the terms of their original contract made and entered into at Olney August 18, 1897, had, in view of their approaching marriage, been waived by him.

Replications were filed to all answers, and the cause was referred to the master in chancery to take proofs and report his conclusions. At the conclusion of the testimony, the cause was argued at length before the master, and he found that the contracts and conveyances

were made as alleged, but that "there was no legal fraud or deception practiced upon said Oliver, and that ample time and opportunity was afforded him to investigate, and that he did investigate, the character and value of the lands in Richland county for which he was trading." He further found that all of the defendants to the bill were innocent purchasers of their respective properties for a valid and valuable consideration, and that they were in nowise connected with said Wilhite and Barlow in their dealings with Oliver, and he recommended as to each and all of the defendants, except T. S. Wilhite, Maude J. Barlow and J. C. Howard, that the bill be dismissed for want of equity, at the cost of the complainant, and that all costs taxed against the complainant be made a first lien on the money in the hands of the master. He further found that the $4000 note, and the contract on the back of the same, purporting to be signed by Maude J. Barlow and George E. Levings, were a forgery, no finding being based thereon; that after the 18th of August (the date of the contracts) there was no longer any partnership between T. S. Wilhite and Maude J. Barlow in their dealings with Oliver; that the marriage between Maude J. Barlow and Revilo Oliver was a fraud from its inception, and recommends that it be declared null and void from the beginning. Objections to his findings were filed by the complainant Revilo Oliver and overruled. Thereafter his counsel, upon affidavits filed by them, attempted to have the case re-opened for the purpose of introducing so-called newly discovered evidence. The defendants filed counter-affidavits, and the master denied the petition and refused to re-open the case, to which exceptions were taken.

The object of the bill of Amaretta Oliver was to cancel and set aside a sale by the sheriff of Livingston county of section 33, in Chatsworth township, upon an execution issued on a judgment in favor of J. E. Brown & Co., in the circuit court of Livingston county, against

Maude J. Barlow and Revilo Oliver on a judgment note given to J. E. Brown & Co., of Chatsworth, for $1150, with six per cent interest, and containing a power of attorney to confess judgment, said judgment having been entered by confession after the filing for record by Maude J. Barlow of the deed from Amaretta Oliver to Revilo Oliver conveying said land, which conveyance both complainants allege was fraudulently brought about, as alleged in said bills, and that said deed, in fact, was never delivered to Revilo by his mother, and was without consideration. The complainant Amaretta Oliver alleges that the said Brown & Co. got no lien on said land, as against her rights, under their said judgment, levy and sale, and asks to be restored to her rights therein. The defendant J. E. Brown answered, setting up said note, confession of judgment, execution, levy and sale, and claiming his rights were superior to those of Amaretta Oliver, alleging that in fact said section 33 belonged to said Revilo Oliver. To this answer a replication was filed, and that cause was also referred to the master to take the evidence and report his conclusions. The evidence heard by the master upon that issue covered the same general grounds as in the former case, and proofs offered by the defendants as to the prior ownership of said land and as to the execution and delivery of said deed. The master held that the defendant Brown had a lawful lien, under his judgment, against said section 33 superior to the claims of Amaretta Oliver, but decreed that he should pay one-third of the costs. Mrs. Oliver in the meantime deposited the amount of that judgment, with interest and costs, with the court, to stand in place of the land, with her stipulation that she would pay six per cent interest thereon, until paid, in case she should be defeated in her suit. Objections were filed before the master but overruled, and both causes were reported to the court, where, over the objection of the defendant in the latter bill, they were consolidated. Upon the com-

201—36

ing in of the master's report it was agreed that the objections filed before him should stand as exceptions thereto, and the same were fully presented and argued before the chancellor, who took the cause under advisement. Upon the announcement of his decision, but before doing so, he of his own motion, over the objection of the complainant Revilo Oliver, called the defendants James A. Smith and George McCabe to the witness stand and questioned them with reference to certain matters, which the complainant then insisted, and on this appeal contends, could only have been properly done upon a re-opening of the case generally.

The chancellor found that the allegations of the bill of Revilo Oliver as to the conspiracy by T. S. Wilhite, Maude J. Barlow and J. C. Howard were sustained by the proof, and decreed accordingly, and entered a money decree against them for $12,411.58. It found that the evidence failed to show that the other alleged conspirators were guilty as charged, and that the parties who obtained title to the property conveyed by the complainant Revilo Oliver to Maude J. Barlow, except Mrs. A. F. Wilhite, wife of the defendant T. S. Wilhite, and John A. Wilhite, a brother of the said T. S. Wilhite, and the said J. C. Howard, were innocent purchasers, without notice of the fraud and conspiracy by which said title was obtained, and on that basis proceeded to adjust the equities between all the parties. It also found and decreed that the conveyance from Amaretta Oliver to the complainant Revilo Oliver was valid and binding.

Complainants in the original bills prosecute appeals, and Revilo Oliver assigns for error, among others, the failure of the court below to find Frank Gillespie, James A. Smith, George E. Levings, G. W. McCabe, William VanVoris, T. C. Seright, J. A. Wilhite and A. T. Wilhite guilty, as co-conspirators, with said T. S. Wilhite, Maude J. Barlow and J. C. Howard; also in finding that said third parties were innocent purchasers of said property

without notice. T. S. Wilhite, Maude J. Barlow and J. C. Howard have assigned cross-errors questioning the decree of the court below finding them guilty of the fraud charged in the bill and rendering a money decree against them.

H. P. BEACH, N. J. PILLSBURY, and J. A. BROWN, for appellants.

EWING, WIGHT & EWING, for appellees T. S. Wilhite, J. C. Howard and Maude J. Barlow.

J. H. ROWELL, and J. E. DYAS, for appellee George E. Levings.

R. R. WALLACE, C. C. & L. F. STRAWN, and R. S. MC-ILDUFF, (STEVENS R. BAKER, of counsel,) for the other appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Prior to the submission of the cause counsel for appellants entered their motion to strike from the files the assignment of cross-errors by the defendants T. S. Wilhite, Maude J. Barlow and J. C. Howard, questioning the findings and decree against them. The grounds of the motion are, "that said parties did not perfect an appeal from the finding of the court below; that the appellants did not appeal from the finding of the court below so far as they related to the said parties so filing cross-errors, but only to reach and hold parties not held in any way liable by the court below, as shown by the stipulation before the court as to what the appellants appealed from; also, that the appeal bond shows that the appeal was not general." To that motion no counter-suggestions were filed and we reserved it to the hearing, but counsel for said three appellants have said nothing in their argument in support of their right to assign cross-errors.

· Clearly, the first ground of the motion is untenable. Section 78 of the Practice act gives the right to appellees or defendants in error, in all cases of appeal or writ of error, to assign cross-errors, and makes it the duty of this and the Appellate Courts to dispose of the same as in other cases of assignment of error. When, however, a decree in chancery is severable,—that is, composed of distinct parts having no bearing upon each other,—each part may be treated as a distinct decree and an appeal taken from one part without affecting the others. (*Walker* v. *Pritchard,* 121 Ill. 221; *Union Trust Co.* v. *Trumbull,* 137 id. 146; *Moore* v. *Williams,* 132 id. 591.) And when an appeal from one part of a severable decree is taken, cross-errors cannot be assigned as to parts not appealed from. *Walker* v. *Pritchard, supra.*

While the exceptions to the decree on behalf of the appellants were general and the prayer and order allowing the appeal was from the whole decree, there is a recital in the record (not abstracted) "that Revilo Oliver and Amaretta Oliver, complainants, having stipulated in open court, by their solicitors, that they are only excepting to the decree of the court on the ground that the court did not hold George E. Levings, Hannah T. Shipley and other defendants, or some of them found by the court as innocent purchasers, liable as knowingly participating in the fraud, and the finding of the court that the deed for section 33 was in fact delivered by Amaretta Oliver to Revilo Oliver, and passed title as far as J. E. Brown was concerned." This recital effectually shows that neither Revilo Oliver nor Amaretta Oliver intended to take an appeal from that part of the decree which found the three defendants guilty and liable as charged.

But of still greater significance is the fact that in the appeal bond filed by the appellants and approved by the court, neither T. S. Wilhite, Maude J. Barlow nor J. C. Howard is mentioned, either in the obligatory part or in

its conditions. On the contrary, the recital in the condition expressly states that the appeal is from a decree against the appellants in favor of George E. Levings and others, defendants named, not including these parties. In other words, the appeal was not perfected against them or either of them. Nor have the appellants assigned any error on the decree in so far as it finds T. S. Wilhite, Maude J. Barlow and J. C. Howard guilty of the alleged conspiracy and fraud and renders a money judgment against them. Upon these facts and the foregoing authorities it is manifest that they have no standing in this court to assign and insist upon the cross-errors relied upon. As to them the decree of the circuit court is final on this appeal.

As to the other defendants certain preliminary questions are raised in the argument of counsel for the complainant Revilo Oliver.

*First*—It is claimed the master wrongfully refused to open up the case for the purpose of letting in alleged newly discovered evidence. After the case had been pending before the master for so long a time, nothing but the most urgent necessity for the attainment of justice between the parties could have justified the opening of the case. Upon counsel's own showing no sufficient reason is given for the failure to discover and introduce the testimony before the evidence was closed. The facts sought to be introduced were merely collateral to the issue and in no sense conclusive. Some of them had already been offered in evidence. They were all, if competent at all, merely cumulative. We said in *Hall* v. *Fullerton*, 69 Ill. 448: "There was an application for a rehearing in the case on the ground of newly discovered evidence, the refusal to grant which is assigned for error. The newly discovered evidence was merely cumulative and not conclusive, which, according to well established rules, is no ground for granting a rehearing." (See, also, *Humphreys* v. *Allen*, 100 Ill. 511.) We see no reason why

the same rule should not apply on an application before the master, after the evidence has been closed and arguments heard, to re-open the case and permit the parties to introduce further evidence. There must be an end some time to the taking of evidence before the master, and his refusal to re-open the case will not be ground for reversal unless it clearly appears that he has abused his discretion in that regard. In this case his ruling was manifestly right.

*Second.*—When the court came to decide the case there was a question as to whether one of the defendants, James A. Smith, had paid a valuable consideration for eighty acres of the land in controversy conveyed to him. Smith and one George W. McCabe were called to the witness stand to be interrogated by the judge in regard to that matter. Counsel for complainant Revilo Oliver objected unless the case was opened generally. After some conversation between the court and counsel for the complainant the witnesses were examined by the judge. No specific objection was made to questions propounded to them, or their answers, and the abstract fails to give the testimony of either of said witnesses. The action of the court in examining these witnesses is insisted upon as error. There is nothing here to show that the testimony so heard was prejudicial to the complainant, or that it was of such importance as to call for a reversal, even though the ruling of the court had been erroneous. No possible injury could have resulted to the complainant. His counsel was offered the opportunity of cross-examining the witnesses.

All questions raised by the cross-errors stricken out being eliminated from the case, we have only to consider whether the chancellor was justified in holding Frank Gillespie and others, alleged to have been co-conspirators with T. S. Wilhite, Maude J. Barlow and J. C. Howard, not guilty, and that they (except Mrs. A. F. Wilhite and John A. Wilhite) were innocent purchasers of the

property which was conveyed to them.  These are purely questions of fact.

The case is argued on behalf of counsel for complainant Revilo Oliver with little or no reference to rule 15 of this court, three separate and distinct arguments being filed by the respective counsel.  The evidence was taken by the master at some five or six different places.  Some of the witnesses were re-called again and again, their testimony being disconnected and fragmentary.  Depositions were introduced on behalf of complainants, several of which were taken a second time, and the evidence of two witnesses after they had testified orally before the master.  Over one hundred and fifty witnesses were called and more than one hundred exhibits offered.  A very large part of this voluminous testimony has no proper application to the issues in the case.  Many of the exhibits make the case little less than ridiculous.  The abstract presents the testimony in the disconnected manner in which it was taken, and the index affords very little assistance in an effort to group the facts.  Under these conditions it would be utterly impracticable to attempt a discussion of the testimony at length, nor would it serve any good purpose to do so.  As to these defendants the findings of the master and chancellor are substantially the same.  We entertain no doubt that the clear preponderance of the testimony sustains that finding.  In fact, we have been able to discover no evidence tending to show that these parties had any connection whatever with the transactions between Revilo Oliver and the three parties found to have been guilty of the conspiracy and fraud charged in the bill.  Whatever wrong was committed by them was consummated before any conveyances were made to either of the alleged co-conspirators, and at least as to a number of these without any knowledge even of the parties.  The evidence also clearly shows that they were innocent purchasers.  Revilo Oliver himself testified that he knew when he made the deeds

that the intention was to re-convey to other parties, and that he made some of the deeds leaving blanks for the name of the grantee, with a power of attorney to fill it in. When asked about the property, after he had conveyed it, by some of these very purchasers, he stated repeatedly that he had no interest in it and claimed none. His counsel place reliance upon the alleged fraud and deception which they say was practiced upon him by the woman, Maude J. Barlow, in bringing about his engagement and subsequent marriage with her. This opinion need not be burdened or extended with the details of that foolish, and in many respects disgusting, transaction. It is inconceivable that a man of his age and apparent intelligence would become the victim of such a woman, but there is no evidence in this record tending to show that any of these parties aided, abetted or assisted her in that matter, and as to some of them his relations with her were in fact unknown. It is difficult to believe, from his own testimony, that he was ignorant of her real character. Moreover, his engagement to her and all his transactions with her were subsequent to, and, so far as we can see, without any direct connection with, the contracts in regard to the property conveyed by him.

On the whole record we are satisfied that the decree of the circuit court, as between Revilo Oliver and these defendants, is as favorable to him as he has any right to ask, and that it does substantial justice to the defendants. The decree, therefore, on the bill of Revilo Oliver against T. S. Wilhite and others, No. 3036, is accordingly affirmed. The cross-errors of Mrs. A. F. Wilhite and John A. Wilhite are overruled.

On the bill of Amaretta Oliver, No. 3054, the sole question is whether the conveyance from her to Revilo should be set aside as against the defendant J. E. Brown, a judgment creditor of Maude J. Barlow and Revilo Oliver. The evidence wholly fails to show that the conveyance was obtained by legal fraud. There is evidence in

the record to the effect that the land in fact belonged to Revilo Oliver and was held by his mother in trust for him.   But admitting that the weight of the testimony is to the contrary, we think her deed to him passed the title at least as to innocent third parties.   The conveyance was, at most, a voluntary one, knowingly and understandingly made, and whether for a good or bad purpose could make no difference as to the defendant Brown, without notice as to why it was made or how it was obtained.   The evidence as to the delivery of the deed is conflicting only in that the complainant swears that it was not handed to the grantee.   Other witnesses swear positively that there was an actual manual delivery of it to him.   But both parties to the deed admit that it was given to Maude J. Barlow in his presence, and he clearly understood that delivery to be for the purpose of conveying the land to him.   He afterwards re-conveyed it to his mother.   The promise not to have it recorded, even if made, could avail nothing as against the defendant Brown without knowledge of that promise.   We entertain no doubt that the court below properly held the land liable to the judgment and execution of Brown, and its decree in that regard will be affirmed.

Brown has assigned cross-errors in this court questioning the ruling of the chancellor in consolidating the two cases over his objection, and in requiring him to pay one-third of the costs in that action.   The consolidation of the cases was only for the purpose of the hearing, and but for the confused manner in which the testimony relating to the case is abstracted and indexed no particular injury would have resulted from that consolidation. At all events, he has suffered no injury from that order. We cannot agree with the finding and decree against him for one-third of the costs on that bill.   It seems that that ruling was upon the theory that the evidence tending to show that section 33 was really the property of Revilo was unnecessary to the defense, because the proof

showed a valid conveyance by his mother to him. When the evidence as to the ownership of the land was taken it could not be known what the ruling of the court would be as to the validity of that deed,—that is, whether it had been obtained by fraud and whether it had been delivered,—and the defendant had a right to rely upon both defenses in support of his judgment lien. The decree in that regard should be so modified as to require the complainant to pay all the costs. That modification will be made in this court and in all other respects the decree of the circuit court of Livingston county will be affirmed.

*Decree modified and affirmed.*