The Chicago and Milwaukee Electric Railroad Co.

*v.*

The Chicago and Northwestern Railway Co. *et al.*

*Opinion filed October 24, 1904.*

1. Appeals and errors—*when cross-error cannot be assigned.* Where a motion to dismiss a condemnation petition against two tracts of land owned by the same defendant is sustained as to one tract and overruled as to the other and the cause proceeds to judgment fixing damages, on appeal from the judgment dismissing the petition cross-error cannot be assigned attacking the judgment fixing damages.

2. Eminent domain—*what does not exhaust power to condemn right of way.* Acquiring a right of way but a portion of the width allowed by statute does not exhaust the power of the company to condemn additional right of way up to the statutory limit.

3. Same—*what not a violation of section 11 of article 11 of constitution.* Condemnation by a railroad corporation of a strip of land parallel to the right of way on which it operates one line of road for the purpose of constructing another track or line is not a violation of section 11 of article 11 of the constitution, forbidding a railroad corporation consolidating with any other railroad corporation owning a parallel or competing line.

4. Same—*what is not a re-location of a line of railroad.* Condemnation of a strip of land upon either side of the right of way purchased by the petitioner, so long as the total width of the right of way does not exceed the statutory limit of one hundred feet, is not prohibited as being a re-location.

5. Same—*extent to which railroad right of way is exempt from condemnation longitudinally.* The doctrine that one railroad company cannot condemn, longitudinally, the right of way of another, whether it is actually needed by the latter for railroad purposes or not, is limited to a right of way of the width which the latter is authorized by statute to condemn. (*I. C. R. R. Co.* v. *C., B. & N. R. R. Co.* 122 Ill. 473, and *Suburban R. R. Co.* v. *Metropolitan Elevated R. R. Co.* 193 id. 217, distinguished.)

Cartwright, J., dissenting.

Appeal from the County Court of Lake county; the Hon. D. L. Jones, Judge, presiding.

On September 10, 1903, the Chicago and Milwaukee Electric Railroad Company, the appellant, filed a petition in the county court of Lake county to condemn two tracts of land, one lying in the city of Fort Sheridan and the other in the village of North Chicago, both in Lake county. Both tracts belong to the appellee, Chicago and Northwestern Railway Company, hereinafter referred to as the Northwestern company, which appeared and filed a traverse to the petition, denying the right or authority of the petitioner to condemn either parcel of land, and at the same time filed a motion in writing to dismiss the petition. The other appellees, who are trustees under certain mortgages of the respondent company, joined in the traverse and motion. The cause was set down for hearing upon the traverse and motion, and upon such hearing evidence being taken in open court, the court held that the petitioner had the right to condemn the strip of land lying in the city of Fort Sheridan, and as to that land overruled the motion to dismiss the petition, and further held that petitioner had no right to condemn the strip of land lying in the village of North Chicago, and as to that strip sustained the motion to dismiss the petition. Thereupon the

court entered judgment that upon the payment of $4500, which had been previously stipulated by the parties to be the amount of damages which would be occasioned by the taking of the property, petitioner have the right to enter upon the Fort Sheridan property. Petitioner thereupon appealed from the judgment dismissing the petition as to the North Chicago property.

The evidence shows that petitioner was incorporated, March 20, 1902, under the act in reference to the incorporation of railroads in this State, and is authorized by its charter to locate, construct, maintain and operate a railroad from the city of Chicago in a northerly direction through the townships of Evanston and New Trier, in Cook county, and through the townships of Deerfield, Shields, Waukegan and Benton, in Lake county, Illinois, to some convenient point on the State line between Illinois and Wisconsin. Prior to the organization of petitioner, the Chicago and Milwaukee Electric *Railway* Company, organized under the general Incorporation act of this State, had constructed, and at the time of the organization of petitioner, was operating, an electric railway extending from Church street in the city of Evanston through the said townships of Evanston, New Trier, Deerfield and Shields, to the city of Waukegan. On December 30, 1902, the Chicago and Milwaukee Electric *Railway* Company conveyed to petitioner all of its railroad property and franchises, and petitioner has ever since owned and operated the road so constructed by the Chicago and Milwaukee Electric *Railway* Company, and which passed through the city of Fort Sheridan and the town of North Chicago.

Petitioner, at the time of filing the petition herein, already owned a strip of land 25 feet wide, west of and adjoining the 25-foot strip here involved, over which it was operating the single track railroad owned by it and hereinabove mentioned, and the additional 25 feet is sought to be taken, as appears from the evidence, in order to lay and operate two tracks, the purpose of petitioner being to have a double track between Chicago and Waukegan.

The North Chicago strip is the west half of a strip of land, 1434 feet in length north and south and 50 feet wide east and west. Twenty-second street is its northern boundary, and it lies west of and adjoining the right of way of the respondent railroad company. The depot and freight building of the latter company are located on a strip 50 feet wide and 1600 feet long, which belongs to that company, and which lies on the opposite or east side of its right of way and the south end of which abuts upon Twenty-second street which running east and west there crosses the Northwestern right of way. A switch track, referred to as a team track, is located east of the main tracks on the right of way adjoining the strip on the east side. The strip west of the right of way has been owned by the respondent railroad company since 1892, and has always been vacant and unoccupied, except that a switch track leading to certain factories in the village crosses it at the north end, which is the track over which a crossing is sought in this proceeding. The evidence of the respondents is to the effect that this entire strip west of the right of way is needed by the Northwestern company for team tracks; that a great deal of business requiring immediate access to a team track is now carried on by one Arnold, who conducts a coal, lumber and lime yard on the strip east of the right of way, just north of the passenger station, under a lease from the railroad company, and that other parties are requesting similar locations at this station for similar purposes, so that cars can be loaded and unloaded upon their premises; that these locations are not furnished to such parties in order to derive revenue from rentals, but for the sole purpose of facilitating the business of the railroad company with the public, and the rental is only nominal, being from one to five dollars per year, and that it has long been the practice of this and other railroad companies to furnish such facilities at stations along their lines; that owing to the growth of business, it had become impossible to furnish such locations with present facilities, at North Chicago and that in September, 1903, (shown by appellant to have

been after the filing of the petition herein,) the division superintendent had a survey made for a team track on the strip sought to be condemned, in order to furnish locations for such industries along the present team track; that in addition to the uses aforesaid, the matter of laying two additional tracks between Chicago and Milwaukee is under consideration by the company, which, if carried out, will place an additional track on the east and one on the west of the present main tracks at this station, the one on the east taking the place of the present team track, and that therefore team tracks will have to be placed on the strip west of the right of way, and will take all that strip, including the 25 feet here involved.

The petitioner introduced evidence to show that in case the additional main tracks are laid, there will be abundant space between the east line of the strip it seeks to condemn and the most westerly of the additional tracks for a team track and for the travel of teams used in loading and unloading cars there.  Respondents sought to show that the entire 50-foot strip west of its tracks is needed by it for side and team tracks now or in the immediate future.

The court, as above stated, dismissed the petition as to this tract on the ground that the land was already devoted to a public use and was not subject to condemnation.

Appellant has assigned errors questioning this action of the court, and appellees have assigned cross-errors, and seek to show that the court erred in overruling their motion to dismiss the petition as to the Fort Sheridan property and in entering judgment of condemnation.

KRETZINGER, GALLAGHER, ROONEY & ROGERS, for appellant:

A railroad corporation need not acquire at one time right of way to the full width allowed by the statute, but may, after acquiring a portion of its right of way, subsequently condemn additional right of way up to the statutory limit of one hundred feet.  *Railway Co.* v. *Wilson,* 17 Ill. 123; *Fisher* v.

*Railway Co.* 104 id. 323;  *Childs* v. *Railway Co.* 33 N. J. L. 323;  10 Am. & Eng. Ency. of Law, (2d ed.) 1060.

A railroad corporation may condemn land owned by another which is not devoted to a public use or so related to land that is in actual public use that it is necessary to the enjoyment of the franchises of the owning corporation.  *Railway Co.* v. *Railway Co.* 66 Ill. 176;  *Railway Co.* v. *Railway Co.* 97 id. 506; *Railway Co.* v. *Railway Co.* 87 id. 317;  *Railway Co.* v. *Railway Co.* 158 id. 396;  *Railway Co.* v. *Morrison,* 195 id. 271.

One railroad corporation may condemn for a higher and superior use, such as for its right of way, lands held by another railroad corporation for inferior uses, such as a sidetrack for delivery of freight to and from wagons. *Railway Co.* v. *Railroad Co.* 112 Ill. 589;  *Railway Co.* v. *Railway Co.* 152 id. 519;  *Railway Co.* v. *Normal,* 175 id. 562; *Railway Co.* v. *Morrison,* 195 id. 271.

S. A. Lynde, (Lloyd W. Bowers, of counsel,) for appellees:

A railroad company cannot, under a general power to condemn property required for its use, appropriate or condemn a strip off the right of way of another company longitudinally.  *Railway Co.* v. *Railway Co.* 81 Ill. 523;  *Railway Co.* v. *Railway Co.* 112 id. 589;  *Railway Co.* v. *Chicago,* 141 id. 587;  *Railway Co.* v. *Pontiac,* 169 id. 155;  *Railway Co.* v. *Morrison,* 195 id. 271;  *Railroad Co.* v. *Railroad Co.* 122 id. 473;  *Railroad Co.* v. *Railroad Co.* 193 id. 224;  *Railway Co.* v. *Chicago,* 151 id. 358.

The rule exempting property which is held and devoted to a public use from condemnation for a similar use extends to and includes all property which is necessary both for present and immediate future uses and which has been acquired and is held for such uses. Elliott on Railroads, sec. 964; *Railway Co.* v. *Railroad Co.* 193 Ill. 217; *Appeal of Sharon Railway Co.* 17 Atl. Rep. 234; *Pittsburg Railroad Co.'s Appeal,* 6 id. 564;  *Railway Co.* v. *Railway Co.* 8 Fed. Rep.

858; *Railroad Co.* v. *Commissioners,* 39 N. J. L. 28; *Railway Co.* v. *Commissioners,* 57 Fed. Rep. 945.

The granting of locations by the respondent at and upon its station grounds for the convenience of the public and for the purpose of increasing its facilities in the transaction of its business with the public is a public and legitimate use. *Railroad Co.* v. *Wathen,* 17 Ill. App. 582.

The statutes of this State do not give authority to railroad companies to change the location of their roads. When the power of location has once been finally exercised it is exhausted, and there remains no further power. *People* v. *Railway Co.* 120 Ill. 65; *Railroad Co.* v. *Suffern,* 129 id. 274; *Railroad Co.* v. *People,* 143 id. 434.

The attempt of petitioner to locate a new line of railroad which is parallel to the line of railroad purchased by it from the Chicago and Milwaukee Electric Railway Company, which it now owns and operates along this route, is in violation of the constitutional and statutory provisions of this State which prohibit the consolidation of franchises, property or stock of parallel or competing railroads and the purchase by one road of property of a parallel line of railroad. Const. 1870, art. 11, sec. 11; Starr & Curt. Stat. chap. 114, pars. 23, 32, 33, 36; *Railroad Co.* v. *Commonwealth,* 7 Atl. Rep. 368; *Railway Co.* v. *Jarvis,* 92 Fed. Rep. 735.

Mr. Justice Scott delivered the opinion of the court:

Appellant moves to strike the cross-errors from the files, on the ground that they relate to a judgment entirely separate and distinct from the judgment brought here by appeal. Petitioner sought condemnation of two separate tracts of real estate. Respondents interposed a motion to dismiss the petition as to both. This motion was sustained as to one parcel, and as to that parcel the judgment dismissing is the final judgment from which petitioner appealed. The motion was overruled as to the other tract, and the cause proceeded to a judgment fixing the amount of damages, and appellees,

by their assignment of error, attack this latter judgment. We think it in effect a judgment separate and distinct from that appealed from. Had the two pieces of property been owned by different persons, it is manifest that those owning the one in reference to which judgment of condemnation was entered could not assign cross-errors questioning that judgment in an appeal by which petitioner brings before this court for review the judgment dismissing the petition as to the real estate of other owners. The fact that both tracts in the present instance belong to the same owner does not render the judgments any the less separate and distinct.

The case of *Oliver* v. *Wilhite*, 201 Ill. 552, was a chancery proceeding, but we regard the doctrine there announced as applicable here. It was there said (p. 564) : "When, however, a decree in chancery is severable,—that is, composed of distinct parts having no bearing upon each other,— each part may be treated as a distinct decree and an appeal taken from one part without affecting the others. (*Walker* v. *Pritchard,* 121 Ill. 221; *Union Trust Co.* v. *Trumbull,* 137 id: 146; *Moore* v. *Williams,* 132 id. 591.) And when an appeal from one part of a severable decree is taken, cross-errors cannot be assigned as to parts not appealed from.— *Walker* v. *Pritchard, supra.*"

The cross-errors will accordingly be stricken from the record.

It is urged that appellant was without power to condemn the strip in North Chicago, as to which the petition was dismissed. This contention is based on the fact that the strip of land which it seeks to take is parallel to the line of road purchased by it from the Chicago and Milwaukee Electric Railway Company. The line so purchased it now owns and operates, and it is said that its attempt to condemn the strip parallel thereto is an indirect violation of section 11 of article 11 of the constitution of 1870, which forbids any railroad corporation consolidating its stock, property or franchises with any other railroad corporation owning a parallel or competing line; and it is said that the petition and the

resolution of location and the plats showing the route located, offered by petitioner, contemplate on their face the location and building of an independent line of railroad, and this being true, petitioner cannot exercise the power of eminent domain for the purpose of acquiring a parallel line of railroad to one which it already owns and is operating. So far as the language of the petition is concerned we think a sufficient answer is, that the route of the railroad which petitioner is authorized to construct and operate is defined in its charter and described in the petition, and the petition specifically avers that petitioner has located and proposes to construct that railroad upon the land which it now seeks to condemn. We do not think the laying of another line of road upon the same right of way, where the company building the new line already has one line, is to be deemed the construction of a parallel or competing line, within the language of the constitution. The right of way now owned by appellant is 25 feet in width. It has the right under the statute to condemn a right of way 100 feet in width. The acquirement of a 25-foot right of way does not exhaust its power, but it possesses the right to condemn additional right of way up to the statutory limit, (*Chicago, Burlington and Quincy Railroad Co.* v. *Wilson,* 17 Ill. 123; *Fisher* v. *Chicago and Springfield Railroad Co.* 104 Ill. 323;) and the fact that it appears that upon this additional 25-foot strip of right of way it proposes to construct a line of railroad in accordance with the terms of its charter, it seems to us, simply means that the additional track is to be operated in conjunction with the existing track as a double track railroad, and not as a parallel or competing line within the meaning of the constitution. The statute contemplates that a railroad company shall have the right to lay as many tracks as it sees fit upon its strip of right of way 100 feet or less in width. As long as its tracks are all laid upon that one right of way, the question of parallel or competing lines does not arise.

It is also urged that the appellant exercised its power to locate the line of its road when it purchased from the rail-

way company a line already located, and that the power of location having been thus exercised, it is exhausted and it is without power to locate a line on the additional 25 feet which it now seeks to condemn, and being without power to locate a line there, it is without power to condemn land for a line which it cannot locate.   In support of this position we are referred to the following cases: *People* v. *Louisville and Nashville Railroad Co.* 120 Ill. 48; *Illinois Central Railroad Co.* v. *People,* 143 id. 434; *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore and Ohio and Chicago Railroad Co.* 149 id. 272; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 149 id. 457.   In each of these cases, it will be found that the court had in contemplation such a change or re-location as would require the use of an entirely different and distinct right of way.   Changing the tracks of a railway from one side to another of a right of way strip 100 feet or less in width is not to be regarded as a re-location.   To constitute a re-location, it is necessary that the new line should be projected, in whole or in part, over and upon ground not included within the original right of way or its additions the whole of that right of way and additions not exceeding 100 feet in width.

It is conceded that a railroad company cannot appropriate or condemn a strip off of the right of way of another railroad company longitudinally, and appellees urge that this 50-foot strip owned by the Northwestern company west of its tracks and south of its station at North Chicago, the west 25 feet of which appellant seeks to condemn, is part of its right of way; and it is said that right of way means the land upon which the railroad company has constructed and is operating or is about to construct and operate its tracks, whether they be main tracks or side-tracks, and is in nowise limited to main tracks, and we are referred to the case of *Chicago and Alton Railroad Co.* v. *People,* 98 Ill. 350, where it is said (p. 357) : "We are, therefore, of the opinion that the land held and in actual use by a railroad company for side tracks, switches and turn-outs, must be regarded, within the

meaning of the Revenue law, as a part of the right of way of the company." We are disposed to the view that the authorities announcing the doctrine that one railroad company can not condemn, longitudinally, the right of way of another, had reference only to the right of way of the width which the railroad company is authorized by statute to condemn. The two cases particularly relied upon by the appellees, *Illinois Central Railroad Co.* v. *Chicago, Burlington and Northern Railroad Co.* 122 Ill. 473, and *Suburban Railroad Co.* v. *Metropolitan Elevated Railroad Co.* 193 id. 217, are of this character. In the first of these cases, it is true that a part of the right of way protected was 200 feet wide. It will be found, however, that this resulted from a grant made by act of Congress, commonly known as the Illinois Central Railroad Company grant, and the right of way of that width, so possessed by appellant in that case, was regarded by the court as being the subject of the same exemption as applies to the statutory right of way 100 feet in width; and in the case last above cited, this court pointed out the fact that the purpose of the suit was to deprive the defendant of its right of way and appropriate it to the use of the petitioner. The contest there was over the right to use the same strip of ground for the main tracks of each company, and the land involved in the contest was evidently within the 100-foot limit.

The statutory right of way acquired through the village of North Chicago by the Northwestern company is 99 feet in width. This 50-foot strip, of which appellant seeks to take a part, adjoins the 99-foot strip, but is no part of it. It is not, therefore, exempt on the theory that it is part of the right of way. If it was within the 99-foot strip, it would be exempt, whether actually needed by the owner for railroad purposes or not, so long as the owner was engaged in the business for which it was chartered. Being outside the 99-foot strip, the question of its exemption depends upon other considerations.

It is said that the ground upon which the court sustained the motion to dismiss the petition, in reference to the strip

at North Chicago, was that such strip is held by the Northwestern company for its railroad uses and purposes, and is necessary for its present and immediate future uses and purposes and to enable it to furnish the necessary facilities required in the transaction of its business at that station. This is a question of fact. The evidence for its determination was heard in open court by the judge of the county court, and it is urged that his finding is entitled to the same weight as would be attached to the verdict of a jury on a question of fact where the trial court had refused to set such verdict aside, but had entered a judgment in accordance therewith. The question here was, Is the strip sought to be taken necessary for the present or immediate future uses of the Northwestern company in connection with the business of operating its railroad? We deem the affirmative finding of the county court against the manifest weight of the evidence. The 50-foot strip, of which petitioner proposes to take a part, has never been occupied by the Northwestern company for any purpose except that a switch track crosses one end of it. On the east side of its right of way at the village of North Chicago, the Northwestern company owns a strip of ground 50 feet in width and 1600 feet long immediately adjoining its right of way, upon which is located its passenger station. On the right of way between the station and the main tracks is a team track, so designated from the fact that it is used to place freight cars where they may be loaded from, or unloaded upon, wagons. It appears that room on this track is abundant for the purposes of the Northwestern company at present. Twenty-five cars can stand on that team track at one time, and the evidence is that at the time of the trial, the Northwestern company was handling only from twelve to fifteen car-loads a week on that track, and its business had been increasing there for several years prior to that time. After the filing of the petition herein, the division superintendent of the Northwestern company, without knowledge, as he says, that the petition had been filed or that appellant was seeking to condemn the 25-foot strip in contro-

versy, had a survey made for the purpose of locating another team track on this strip west of the right of way. His purpose was to have a track laid there to use as a team track, so that the Northwestern company could lease ground in the strip owned by it east of its right of way and along its present team track to persons who now desire to establish thereon coal yards, lumber yards, flour and feed stores and other business of like character, where freight can be unloaded directly into or upon the place where it is to be stored prior to sale without hauling by wagon. It also appeared that the Northwestern company is contemplating the construction of two additional main tracks upon that part of its right of way which passes through North Chicago, one to be on each side of the two main tracks now occupying the right of way. The one on the east side would then occupy the space now occupied by the present team track, and it is urged on the part of the Northwestern company, for reasons unnecessary to repeat here, that it would not then be feasible to construct a team track upon the ground now owned by it on the east side of the right of way, and that the only other place at which such team track could be constructed would be on this 50-foot strip on the west side of the right of way, and that if 25 feet be taken by appellant by condemnation, sufficient ground will not be left on which to construct the new team track. The distance between the west rail of the present main track of the Northwestern Railroad Company, where it passes this property, and the west line of this 50-foot strip is 91½ feet. Deducting 25 feet for the strip which petitioner proposes to take and 13 feet, which is said to be the proper space to allow for an additional main track on the west side of the present main tracks, an aggregate of 38 feet, and there is left 53½ feet. The only conclusion that can be drawn from the evidence is that this is abundant space upon which to construct and use one team track, and if the team track on this ground is constructed for the purpose of enabling the Northwestern company to lease to its patrons ground along its present team track, and the pro-

posed additional main tracks should not be constructed, the space for the new team track would be 13 feet greater.

It is contended by the Northwestern company that this space, especially if the additional main tracks be constructed, will be insufficient, and in this respect great reliance is placed upon the testimony of Edward C. Carter, its engineer, from whose testimony the following is quoted by counsel for appellees:

"My judgment would be that the land which petitioner seeks to condemn would unquestionably be necessary in case of the construction of the four main tracks. I base that judgment on the construction the last six years of something like 300 miles of second track for the Northwestern road, where at almost every station we were compelled to secure some additional property in order to provide the facilities that were required, whenever it was possible for us to secure it. Many times we were obliged to go to considerable additional expense in order to complete the additional track on the right of way that we had and which we could not add to."

This is too indefinite. Besides, this testimony is based upon the necessity of constructing two team tracks west of the most westerly of the two new main tracks, with a paved team-way between, an arrangement which seems unnecessarily elaborate for a village which, according to the evidence, had a population of but 1150 at the last census, and in which but twelve or fifteen cars per week, are loaded upon, or unloaded from, the team track. A team track constructed west of the right of way could be approximately 1200 feet in length. There is nothing whatever in this record to indicate that the Northwestern company will, at any time in the near future, need greater accommodations on a team track at that station than would be afforded by one of that length. It certainly appears that greater length will not be required unless its business requiring such facilities there should multiply many times, and no probability of such a condition of affairs arising soon is shown by the evidence.

The testimony shows that with but one team track laid on the 53½-foot strip, there would be abundant space left for the use of teams in loading and unloading, a greater space than the Northwestern company has reserved for that purpose, in connection with any one team track, in its yards at Chicago, Highland Park, Lake Forest or Waukegan. It is possible, it is true, that the Northwestern company may, at some remote time in the future, need for public use the 25-foot strip which petitioner seeks to condemn, or a like space elsewhere at that station. It is evident that it does not need it now, and will not need it in the immediate future. Petitioner needs it now for a present public purpose, for which it has the power to acquire a right of way by condemnation. The remote and uncertain needs of the Northwestern company must yield to the present and certain right of appellant.

Appellant also argues that its right to condemn this strip cannot be defeated by showing that the Northwestern company needs it for the purpose of constructing thereon a team track in order that it may lease the land contiguous to its present team track to patrons who may desire to carry on a business there, where they may have ready access to the switch, and also contends that as it desires this strip for its main track, while the Northwestern company seeks to use it merely for a side-track of the kind under discussion, the use to which appellant proposes to devote the land is of a higher character than that to which the Northwestern company desires to appropriate it, and that appellant, therefore, has the right to condemn it even if it was necessary for the uses of the Northwestern company for team track purposes. We find it unnecessary to consider either of these questions.

The judgment of the county court appealed from will be reversed and the cause remanded to that court for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*

Mr. Justice Cartwright, dissenting.